# Russell *v.* Davis, Adm'r, &c.

*Bill to Set Aside Fraudulent Conveyances and for Accounting.*

1. *Fraudulent conveyance; burden of proof.*—In an action by an existing creditor to set aside a conveyance as fraudulent, the burden of proof is on the complaining creditor to show the existence of his debt; but the existence of the debt being shown and the conveyances being admitted, the burden of proof is on the grantee in the conveyance to show the *bona fides* of the transaction.

2. *Debtor and creditor; principal and agent; compensation of agent, when excessive.*—Where the amount of the income in the way of rents from certain plantations was about twenty-five hundred dollars, a charge of two thousand dollars for a year's services rendered by an agent in letting out and collecting the rents and looking after the repairs on said plantations, and visiting the plantations three or four times during the year, is excessive; three hundred dollars being a fair and reasonable compensation therefor.

3. *Fraudulent conveyance; transactions between relatives; bona fides.*—In determining the *bona fides* of a transaction assailed as fraudulent the fact that such transaction was had between parties nearly related is a circumstance which naturally calls for closer scrutiny than where the transaction is between strangers.

4. *Fraudulent conveyance; several conveyances to different grantees, how treated; common fraudulent purpose.*—Although conveyances are separate, covering different property, and executed on different dates to several grantees (all brothers

[Russell· v. Davis, Adm'r. &c.]

of the grantor), yet, if made in pursuance of a purpose common to the grantor and the grantees to defraud the grantor's creditors, they will be regarded and treated as a single transaction, and any fact that would vitiate any one of said conveyances will be visited upon all.

5. *Fraudulent conveyance; law governing prior to enactment of present statute (Code, 1896, § 2158.)*—Although, prior to the enactment of section 2158 of· the Code of 1896, a debtor in failing circumstances or insolvent, had the right to prefer one or more of his creditors over others to the extent of conveying his entire estate, and defeating other creditors in the collection of their debts; yet, to support such conveyance, it must have been absolute and without the reservation of benefit to the grantor; the debt or demand must have been a pre-existing one; and the property conveyed, on a fair and reasonable valuation, and must not have unreasonably exceeded the debt.

6. *Same; when conveyance held fraudulent as to existing creditors.* A bill filed in equity, for the purpose of having set aside several conveyances as being fraudulent, the following facts were shown: A merchant, being insolvent or in failing circumstances, in the space of forty days made several conveyances to different brothers of property amounting in the aggregate to about ten thousand dollars in value, and being substantially all his visible, tangible assets, outside of his exemptions; and where the grantees knew of the grantor's insolvency, and grantor and grantees were intimate as brothers, and had frequent interviews and conversations during the time covering the making of the transfers; and two of the grantees were at the time in the employment of the grantor, and another had his office in the store where the grantor carried on his merchandise business; and where the books, of the grantor offered in evidence showed very suspicious irregularities as to the debts to his brothers and in the order in which they were made and contained a number of erasures; and where there was evidence tending to show that during the time covering the transactions the grantor transferred and sold to one of the grantees choses in action for a present cash consideration; and that the grantor subsequent to the alleged transfers was in the possession of choses in action, embraced in the conveyances, trying to collect same: *Held:* That the grantees and grantor had a common purpose to defraud; that the grantees had not discharged the burden of showing by clear and satisfactory proof the *bona fides* of the transactions assailed; and that the conveyances or transfers were fraudulent as to existing creditors.

[Russell v. Davis, Adm'r. &c.]

APPEAL from Limestone Chancery Court.

Heard before Hon. W. H. SIMPSON.

The bill in this case was filed by P. F. Garrett, as administrator of the estate of Eliza A. F. Lane, deceased, against E. J. Russell, J. M. Russell, W. B. Russell, George R. Russell and Thomas A. Russell.

The purpose of the bill and the facts of the case necessary to an understanding of the decision on the present appeal are sufficiently shown in the opinion.

Pending the suit said P. F. Garrett died, and the cause was revived in the name of John H. Davis, as administrator *de bonis non* of the estate of Eliza A. F. Lane, deceased.

Upon the submission of the cause on the pleadings and proof, the chancellor granted the relief prayed for. From this decree the respondents appeal.

HUMES, SHEFFEY & SPEAKE and W. R. FRANCIS, for appellants, cited *Rankin & Co. v. Vandiver*, 78 Ala. 562; *Dickson v. Higgins*, 82 Ala. 264; *Levy v. Williams*, 79 Ala. 171; *Hodges v. Coleman*, 76 Ala. 103; *Carter Bros. & Co. v. Coleman*, 84 Ala. 256; *Harris v. Russell*, 93 Ala. 59; *Harrison v. Johnson*, 27 Ala. 445; *Moses Bros. v. Noble*, 86 Ala. 417; *Golden v. Connor*, 89 Ala. 598; *Lathrop Hatten Co. v. Bessemer Savings Bank*, 96 Ala. 350; *Moore, Marsh & Co. v. Penn*, 95 Ala. 200; *Buford v. Shannon*, 95 Ala. 205; *Ziegler v. Carter*, 94 Ala. 291; *Brinston v. Edwards*, 94 Ala. 447; *First Nat. Bank v. Smith*, 93 Ala. 97; *Hannon v. McRae*, 91 Ala. 401; *Dollins v. Pollak*, 89 Ala. 352; *Crawford v. Kirksey*, 55 Ala. 282; *Montgomery v. Bayliss*, 96 Ala. 172; *Chipman v. Stern*, 89 Ala. 207; *Knowles v. Street*, 87 Ala. 357; *Shealy v. Edwards*, 75 Ala. 411; *Boggs v. Edison Electric Illuminating Co.*, 96 Ala. 295; *Smith v. Collins*, 94 Ala. 304.

McCLELLAN & McCLELLAN and J. H. TURRENTINE, contra.—The conveyances attacked by the bill and sought to be set aside were fraudulent and void; it being shown that they were made for the purpose of hindering, delaying and defrauding the complainants and other credi-

[Russell v. Davis, Adm'r, etc.]

tors.—Bump Fraud. Conv., 69, 76, 77, 78, 79, 80, 81, 82, 92, 95, 96, 98, 553 to 566; Wait Fraud. Conv., §§ 3, 5, 6, 7, 8, 13, 225, 231, 233, 234, 235, 236, 239, 241; 242; 243, 272; *Thames v. Rembert,* 63 Ala. 561; *Harrell v. Mitchell,* 61 Ala. 270; *Pickett v. Pipkin,* 64 Ala. 520; *Gordon v. McIlwain,* 82 Ala. 250; *Smith v. Kaufman,* 100 Ala. 408; *Smith v. Kaufman,* 25 Ala. 161; *Sims v. Gains,* 64 Ala. 392; *Danner & Co. v. Brewer & Co.,* 69 Ala. 191; *Tryon v. Flournoy,* 80 Ala. 321; *Carter Bros. v. Coleman,* 82 Ala. 177; *Owens v. Hobbie,* 82 Ala. 466; *Smith v. Kaufman,* 100 Ala. 408; *Shealy & Finn v. Edwards,* 75 Ala. 411; *Lehman v. Kelly,* 68 Ala. 192.

The facts and circumstances as proven show that the brothers, with E. J. Russell, combined and formed a common and widespread conspiracy to "hinder, delay and defraud" his creditors, which they prosecuted and carried out with energy and vigor to a successful termination. Thus from day to day, from January 1 to February 7, 1882, there was an incessant, persistent and fierce alienation of E. J. Russell's property, mainly to his brothers, time for which was gained by every sort of subterfuge, deceitful pretense and crafty trick. The conspiracy being thus thoroughly established between all of the defendants by which, substantially, all his property was divested out of him by a series of conveyances to his brothers, then these conveyances, however numerous, will be treated as one transaction.—Wait on Fraud. Conv., 282; Bump on Fraud. Conv.. 548; *Harris v. Russell,* 93 Ala. 59; *Perry Company v. Foster,* 58 Ala. 520; *Pickett v. Pipkin,* 64 Ala. 520; *Hinds v. Hinds,* 80 Ala. 225, 227.

But the brothers, the grantees, undertake to shield themselves under the much abused doctrine laid down first in this State in 73 Ala. 103, 120, now prohibited by statute, that a man, though insolvent or in failing circumstances, may lawfully give a preference among his *bona fide,* pre-existing creditors, by absolute sales of his property at a fair price to some of them to the exclusion of others, the intent in such case being immaterial, provided no benefit is reserved to himself.

In approaching this, as the other phase of the case,

it will not be forgotten that the burden of proof is on the grantees; that the debts due the creditors being older than the sales, the sales are presumed to be void for fraud; that the consideration, the sales and the price of the property must be *bona fide,* fair and adequate; that such sales between the nearest kinsmen are looked on with the most jealous, suspicious and skeptical eyes, and if there is a single cloud, however small, resting over them, they must fall; that the protests of innocence, of good faith and of fairness by such grantees are of little if any weight when in conflict with the circumstances, the reason and natural order of things; that possession of the property, in such a case as this, must be promptly delivered to the grantees; that the declarations of each of the parties while still in the possession of the property, whether before or after the sales, are competent evidence against all of them, especially when a conspiracy among them is apparent; that such a case as this is usually made out from circumstances, great latitude for which is allowed, such transactions being hedged about, carried on under cover and rarely avowed; that all the badges and circumstances of fraud are as pertinent to the *bona fides* of the consideration, the good faith of the sales and the benefit reserved as to the intent, when it is material; that the subsequent dealings of the parties among themselves, the support of the grantor by the grantees and their conduct on former trials of the matters in controversy are all admissible; that vague, general and evasive answers to the bill or to questions by the parties are exceedingly suspicious; that the grantees must have the ability to purchase the property; that if either one of these sales, to either one of the grantees, is bad, all are bad; that neither of the grantees must go beyond his own safety or security, nor interfere with other creditors for the benefit of anybody; and that, after all, the transactions with the grantees cannot be sustained by anything less than "clear, convincing and satisfactory evidence." These various propositions are fully sustained in one or more of these authorities, if the court has any doubt about them: *Moog v. Barrow,* 101 Ala. 209; *Harris v. Russell,* 93 Ala. 50; *Pollak v. Searcy,* 84 Ala. 259; *Hubbard v. Allen,* 59 Ala. 283; *Harrell v.*

*Mitchell*, 61 Ala. 270; *Crawford v. Kirksey*, 55 Ala. 282; *Carter Bros. v. Coleman*, 82 Ala. 177; *Buchanan v. Buchanan*, 72 Ala. 55; *Morrison v. Morris*, 85 Ala. 196; *Jaffrey v. McGough*, 83 Ala. 202; *Calhoun v. Hannan*, 87 Ala. 277; *Pickett v. Pipkin*, 64 Ala. 520; *Flournoy v. Lyon*, 70 Ala. 308; *Proskauer v. Banks*, 77 Ala. 257; *W. Un. Tel. Co. v. State Board*, 80 Ala. 275; 26 Am. St. Rep. 254, 257; 5 Am. St. Rep. 657; *Hall v. Heydon*, 41 Ala. 242; Bump, 90 to 98, 353, 354, 548, 560, 561; Wait, 5, 6, 7, 13, 242, 251 to 259, 255 to 257, 281, 282.

DOWDELL, J.—The present bill is that of a creditor against an insolvent debtor and for the purpose of setting aside certain conveyances made by the debtor as being fraudulent as to creditors, and in this connection to have an accounting by the debtor, E. J. Russell, with the complainant as the administrator of the estate of Eliza Lane, deceased. The equity of the bill was determined by this court on a former appeal from the decree of the chancellor overruling the demurrer to the bill.—*Russell v. Garrett*, 75 Ala. 348. The present appeal is taken from a final decree on a submission of the cause upon the pleadings and evidence. In this decree the chancellor without passing upon the numerous objections and exceptions to testimony on both sides, and after considering only the competent and legal evidence, as stated in his decree, determined that the complainant was entitled to the relief prayed for in the bill. By the decree the following facts also were specially ascertained from the evidence, viz.: That the respondent, E. J. Russell, was indebted to Eliza Lane at and before the time of the alleged fraudulent transfers, and to the complainant as the administrator of her estate, at the time of the filing of the bill; and that the transfers and conveyances made by the debtor from the first day of January to the 7th day of February, 1882, as alleged in the bill were fraudulent and void as to creditors, and, also, that the said E. J. Russell was insolvent at the time of the said alleged transfers and conveyances of his property. The decree then di-

rected a reference to the register to ascertain the amount of the complainant's debt, and, also, the description and value of the property so transferred and conveyed, which the decree condemned for the satisfaction of said indebtedness.

The assignments of error go to the chancellor's conclusions as to the facts from the evidence.

The principles of law applicable to the present case are plain and practically free from difficulty; indeed, there is little or no controversy as to the law governing the main issues in the case. The testimony taken in the case is voluminous, covering over a thousand pages of the transcript. The objections and exceptions to evidence on both sides are numerous, and much of the same is subject to objection for being either illegal, incompetent, or irrelevant. We concur with the chancellor in the suggestion as to the time it would take to enter upon a discussion of the objections to the evidence; besides, it would extend this opinion into many pages without subserving any beneficial end. We have given the whole of this testimony a careful reading and after eliminating the illegal and considering that which is legal, will in dealing with the questions involved, undertake only to state our conclusions as to the facts drawn from the evidence.

The first question of fact presented for consideration is that of indebtedness from the respondent E. J. Russell to the complainant as administrator of the estate of Eliza Lane, deceased. The chancellor in his decree determined from the evidence the existence of an indebtedness, without ascertaining the amount, but referred the question of amount to the register. The appellants assign this finding of fact by the chancellor as error, insisting that on the evidence, the respondent E. J. Russell was and is a creditor of said estate and not a debtor. On this question of indebtedness the burden of proof was on the complainant. It is a conceded fact that the said E. J. Russell was the agent of the said Eliza Lane from some time in the early spring of 1881 until her death on May 16th, 1882, in letting out and collecting the rent on several plantations in the county

of Limestone, and looking after the repairs on said plantations, and, also, in advancing supplies to tenants on the plantations enabling them to grow crops on the same, on the credit and responsibility of Mrs. Lane, the said agent being at the time engaged in the business of a merchant in the town of Athens, and realizing the profits on such advances. The said E. J. Russell offered in evidence a statement of his account as such agent, with credits and debits, showing a balance in his favor of something over six hundred dollars. Without attempting to ascertain or show the amount of the said Russell's indebtedness, a matter to be hereafter determined under the decree of reference, we need only to advert to one item contained in said account and the evidence relating thereto to satisfy us of the correctness of the chancellor's finding of the fact of said Russell's indebtedness to said estate. In this account he credits himself with the sum of two thousand dollars for his services rendered as such agent. There is no pretense of any contract or agreement between him and his principal of any stipulated sum for his services. He simply claims the same as reasonable compensation for services rendered and offered evidence to that end. The great weight of the evidence, we think, satisfactorily and clearly shows that for the services actually rendered the claim was excessive, and that a fair and reasonable compensation would not exceed three hundred dollars. The amount of the income in the way of rents from these plantations being about twenty-five hundred dollars, a charge of two thousand dollars for services rendered, which consisted in the main of letting out the lands and collecting the rents and visiting the plantations three or four times during the year, is as shown by the evidence palpably an inequitable division of the proceeds by the agent with his principal. With this item of his account scaled to what would be fair and reasonable compensation for his services as agent as shown by the great weight of the evidence, the fact of his indebtedness to the complainant is put beyond doubt. But, in addition to this, there is the testimony of several disinterested witnesses to his

admission of an indebtedness to the estate of Mrs. Lane, made by him in conversation with these witnesses at different times soon after the death of Mrs. Lane.

The next assignment of error in the decree, like the first, relates to the finding of a fact, viz., fraud in the transfers and conveyances of his property by the said E. J. Russell to his several brothers from the first of January up to and including the 7th day of February, following. The making of the several transfers and conveyances to his brothers by the said respondent E. J. assailed by the bill is not denied, but it is claimed by the respondents that these conveyances and transfers of his property were made in good faith and in payment of a pre-existing indebtedness of the said E. J. to each of the several grantees. The existence of a debt to the complaining creditor being shown, the conveyances by the debtor being admitted, the burden of proof is upon the grantees in the conveyances assailed as fraudulent, to show the *bona fides* of the transactions. This proposition of law is too familiar to require elaboration in argument, and as for authorities we content ourselves by referring to those cited in brief of appellee's counsel.

That the respondent E. J. Russell was insolvent during the period of time from January 1st to February 7th, 1882, covering the conveyances attacked by the bill and held fraudulent by the chancellor, we think the evidence clearly establishes. Counsel for appellant concede in argument, that during this time he was being harassed by some of his creditors and was financially embarrassed. The grantees in the alleged fraudulent conveyances were the brothers of the grantor, the embarrassed and failing debtor, and that they knew of his insolvency, we think under the evidence, is beyond doubt. They were intimate as brothers, and had frequent interviews and consultations during the time covering the making of the alleged fraudulent transfers. Two of the brothers were at the time in the employment of the grantor, and another had his office in the store where the grantor carried on his merchandise business. In determining the *bona fides* of a trans-

action assailed as fraudulent, the fact that such trans-
action was had between parties nearly related, is a
circumstance which naturally calls for closer scrutiny
than where the transaction is between strangers. In
the present case the transfers of his property by the
said E. J. Russell to his several brothers, when taken
in the aggregate amounted to about ten thousand dol-
lars, and, outside of his exemptions, embracing sub-
stantially all of his visible tangible assets. That it
was the purpose of E. J. Russell in making these trans-
fers of his property to hinder, delay, and defeat other
creditors in the collection of their debts, we think the
evidence establishes beyond question, and our con-
clusion from the evidence is, that his brothers, the
grantees, shared in this purpose. The evidence, in our
opinion, warranted the conclusion reached by the chan-
cellor of the existence of a common purpose on the part
of the debtor and the grantees respondents in the bill,
to defeat the creditors of the said E. J. Russell, and
such being the case the several conveyances, which were
made in the months of January and February, 1882,
though separate as to the several grantees and made at
different times will be regarded and treated as a single
transaction. And although the conveyances are sepa-
rate, and executed on different dates, if done in pur-
suance of a purpose common to the grantor and the
grantees to defraud, any fact that would vitiate any one
of said conveyances as fraudulent, would be visited upon
all. Throughout these transactions from the first of
January to the 7th of February, on which latter date, the
last of his visible assets consisting of his stock of mer-
chandise in his Athens store was conveyed in bulk,
the evidence discloses many circumstances denominated
in the books as badges of fraud. But it is insisted that
these transfers of his property by the debtor to the re-
spective brothers, were made in satisfaction and pay-
ment of antecedent *bona fide* debts due and owing by him
to the said grantees, and for that reason the convey-
ances should be upheld regardless of the intent or mo-
tive. At the time of the making of these conveyances,
which was prior to the enactment of the present statute

(Code, 1896, § 2158), a debtor though in failing circumstances or insolvent, had the right to prefer one or more of his creditors over others to the extent of conveying his entire estate, and to the end of defeating such other creditors in the collection of their debts. But even then to support such conveyance, the same must have been absolute, and without reservation of any benefit to the grantor; the debt or demand a *bona fide* preexisting debt; the property conveyed, on a fair and reasonable valuation, not unreasonably excessive of the demand. On the other hand, if the conveyance was not absolute, or benefit reserved, or if the property conveyed was materially in excess of the demand, or if the debt was simulated or fictitious in whole or in part, or if the purchasing creditor gave in part any cash consideration in obtaining the conveyance, it rendered the same void as to other creditors. When tested by these principles, the burden resting upon the respondents to show by clear and satisfactory proof the *bona fides* of the transactions assailed, we are unable from all of the evidence to say that the burden has been discharged. As to the question of indebtedness to the respective grantees, in support of the testimony of the grantor and each of the grantees as to his particular debt, the books of the debtor grantor were offered in evidence to show the amount and that the debt was an antecedent debt. The entries in the debtor's books relative to the indebtedness showed very suspicious irregularities as to debts and in the order in which they were made, and also contained evidence of a number of erasures. This evidence tended very materially to weaken the testimony of the grantor and the grantees as to the *bona fide* existence of the alleged indebtedness. There is also other evidence which throws suspicion on the alleged claims of one or more of the grantees. There is likewise, evidence which shows a reservation to the grantor in the transfer of some of his assets, or a pretended and not an absolute transfer. The evidence shows the grantor subsequent to the alleged transfers in the possession of choses in action trying to collect the same. There is also evidence going to show during

42c

[Russell v. Davis, Adm'r. &c.]

the time covering the transactions assailed in the bill transfer and sale by the debtor to one of the grantees of choses in action for a present cash consideration. Besides the circumstances adverted to above, there are others shown in the evidence relative to the actions, conduct, and statements by the said E. J. Russell and his said brothers, which taken in connection with what we have mentioned, go not only strongly to show a common design on the part of the grantor and grantees to defeat other creditors in the collection of their debts, but also to impeach the *bona fides* of the alleged indebtedness of the grantor to the several grantees. To say the least of it, the evidence of the respondents, in face of so many suspicious circumstances disclosed, falls short of that clear and satisfactory proof required under the law and necessary to satisfy a court of equity of that good faith in the transaction between persons so intimately and nearly related when assailed for a fraud. On account of the number of witnesses examined, the wide range taken in the testimony, and the voluminousness of the evidence, we have felt justified in this opinion in referring to it in a general way. And our conclusion from the whole evidence is, that the decree of the chancellor is free from error, and is here affirmed.

McCLELLAN, C. J., not sitting.