# Cowan, Trustee, *v.* Staggs, *et al.*

*Bill to Cancel Conveyance for Fraud, and to Condemn Property to Pay Debts.*

(Decided May 30, 1912. 59 South. 153.)

1. *Bankruptcy; Fraudulent Conveyance; Power of Trustee.*—A creditor who has acquired no lien on the property is not entitled under section 3383, Code 1907, to have a trustee in bankruptcy, as his representative, to sue to annul the conveyance as a fraud upon him.

2. *Same.*—It is the duty of a trustee in bankruptcy to represent the unsecured creditors, and he cannot sue to annul a conveyance as in fraud of a creditor having a lien on the property conveyed.

3. *Fraudulent Conveyances; Judgment Creditors; Date.*—The rendition of a judgment on a certain day establishes the indebtedness as of that day only, as affecting the right to annul a conveyance for fraud against the judgment debtor; proof that the judgment was based on a breach of warranty of title in 1901 establishes the date of the debt as of that time.

4. *Same; Burden of Proof.*—In an action to set aside a conveyance by the grantor to his sons as in fraud of his creditors, executed after the creditor pressed his demand just before bringing the action, the burden is on the respondent to establish the bona fides of the transaction.

5. *Same; Evidence.*—The evidence examined and held to warrant a finding that the conveyances sought to be cancelled were made with a fraudulent intent.

6. *Same; Vacation; Who Benefited.*—Fraudulent conveyances when annulled must be annulled as to all existing complaining creditors.

7. *Same; Annulment; Parties; Mortgagees.*—On a suit to annul the fraudulent conveyances, a mortgagee under a valid prior and independent mortgage is not a necessary party.

8. *Same; Effect on Mortgages.*—The annulment of a fraudulent conveyance does not affect a valid, pre-existing mortgage.

9. *Judgment; Res Judicata.*—A judgment awarding damages for breach of warranty of title precludes consideration of any inequitable conduct by plaintiff-grantee, after discovery of the fact, in a subsequent action to annul conveyances as being in fraud of the judgment.

10. *Homestead; Occupancy.*—Actual occupancy of a homestead is essential to a valid claim of exemption, unless a declaration covering a temporary absence is filed, as required by section 4192, Code 1907.

11. *Same; Abandonment.*—The evidence examined and held to show an abandonment of the homestead.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by A. S. Cowan, as trustee, against D. F. Staggs and others, to annul a conveyance as a fraud on creditors and condemn the land for payment of respondents' debt. Decree for respondents, and complainant appeals. Reversed and remanded.

The bill alleges that D. F. Staggs was adjudged a bankrupt on his voluntary petition on June 8, 1910, and at a meeting of the creditors held on June 21, 1910, A. S. Cowan was duly and legally appointed as trustee,

and qualified as such; that said Staggs did not schedule any property, except a small amount of personal property, which was claimed as exempt. It is then alleged that on the 6th day of October, 1909, D. F. Staggs was the owner of the surface right in about 75 acres of land, which is described in the bill, and that on that date, for an alleged consideration of $450, he conveyed to his son J. T. Staggs 40 acres of said land, and on January 3, 1910, for a recited consideration of $400, conveyed to his son L. P. Staggs, a minor, the remaining 35 acres of said land, and that later, on August 9, 1910, after said Staggs had become a bankrupt, he executed to said L. P. Staggs another deed, intended as a correction of the deed formerly executed to him. The allegation is made of the transaction between Howton and the said D. F. Staggs, as shown by the opinion in this case. The sixth paragraph alleges a knowledge on the part of the two grantees of the said D. F. Staggs of the existence of the claim of said Howton against their father, and also knew that their said father was conveying to one practically all the property owned by him subject to the payment of his debt. The seventh paragraph alleges the execution of said conveyances by the said D. F. Staggs with the intent to hinder, delay, or defraud his creditors, and for the purpose of fixing his property so that it could not be reached by Howton or any other creditor, and that therefore the conveyance was fraudulent and void. The eighth paragraph alleges the judgment of Howton against Staggs, its record, and the fact that the said grantees were in possession of facts which, if followed up, would have led to knowledge of the fraudulent intent of their father, and it is therefore charged that said grantees knew of and participated in the said fraudulent intent. The ninth paragraph charges, on information and belief, that no considera-

tion was paid by either of the grantees. The facts are
as stated in the opinion.

ESTES, JONES & WELCH, for appellant. The trustee
was authorized to maintain this suit.—Secs. 3739, and
4293, Code 1907; *Anderson v. Mather,* 134 Ala. 364;
*Lacy v. Cowan,* 166 Ala. 546; *Steverson v. Bird,* 166
Ala. 363; s. c. 166 Ala. 422. The fact that the bankrupt
had been discharged did not preclude the trustee from
recovering property fraudulently conveyed.—*Steverson
v. Bird, supra; Myer v. Eldridge,* 103 U. S. 301. The
conveyance was not recorded until after judgment was
obtained, and was therefore void.—Sec. 3383, Code
1907; *Griffin v. Hall,* 115 Ala. 647; *Richards v. Steiner
Bros.,* 166 Ala. 353. Under the last case cited, the bur-
den was on the grantee in the deed to show notice. The
evidence sufficiently showed fraudulent intent even
though full value was paid.—*Graves v. McDade,* 108
Ala. 442; *Russell v. Davis,* 133 Ala. 647; *Murphy v.
Green,* 128 Ala. 486; *Davis v. Vandiver,* 160 Ala. 454;
*Teague v. Bass,* 131 Ala. 422. Under the proof the date
of the debt was the breach of the warranty in 1901, and
the judgment in 1910, had the effect to fix the amount
thereof.—20 Ala. 732; 70 Ala. 75; 72 Ala. 501; 130
Ala. 642; Sec. 4293, Code 1907. The burden of showing
the bona fides of the transaction was on the grantee.—
*Davis v. Vandiver, supra; Russell v. Davis, supra;
Yeend v. Weeks,* 104 Ala. 341. The proof showed an
abandonment of this property as a homestead.—*Wood-
ward I. Co. v. Richardson,* 94 Ala. 567; *Boyle v. Schul-
man,* 59 Ala. 567; *Barbour v. Williams,* 74 Ala. 33;
*Blackmon v. Moore-Handley Hdw. Co.,* 106 Ala. 459;
*Land, et al. v. Boykin,* 122 Ala. 627.

PINKNEY SCOTT, for appellee. The mortgagee Wilkie
was a necessary party.—*Bondurant v. Sibley,* 37 Ala.

573. The question was raised by the motion made in the submission of the cause.—*Prout v. Hogue,* 57 Ala. 32; *Powe v. McLeod,* 76 Ala. 420. So far as title was concerned the trustee stood in no better position than the grantee in the deed, and there was no release in the mortgage or permit for others to litigate over.— *T. C. & I. R. R. Co. v. E. A. Ry. Co.,* 75 Ala. 529; *Porter v. Lazear,* 109 U. S. 84. If Howton is permitted to recover through Cowen, the lawyers are permitted to recover on their champertous contract.—*Dumar v. Smith,* 17 Ala. 305. The evidence shows the land to be a homestead. Howton holding under the deed, and holding possession of the land would have to show a rescisison before he would have any standing in court.—*Maxwell v. Sherman,* 52 South. 520. Independent of the judgment, the Chancellor could go into the question and decide the case.—*Tankersly v. Pettus,* 71 Ala. 186. Howton was guilty of laches.—*Maxwell v. Sherman, supra.*

SAYRE, J.—As we read the record, the only questions presented are whether the grantor in the conveyances attacked intended thereby to defraud his creditors, and whether his vendees were bona fide purchasers for value without notice of their vendor's alleged fraudulent intent. If Howton, who is the creditor represented by the trustee in bankruptcy in this case, had acquired no lien on the property, section 3383 of the Code gives the trustee no standing in court.—*Sparks v. Weatherly,* 176 Ala. 324, 58 South. 280. If, on the other hand, Howton had acquired and kept alive a valid lien, he cannot employ the trustee to enforce it for him, nor can the trustee employ the powers of his office for that purpose. His business is to represent the unsecured creditors.

[Cowan, Trustee, v. Staggs, et al.]

The bill attacks two separate conveyances made by D. F. Staggs to his sons J. T. and L. P. Staggs of separate parcels of land on October 6, 1909, and January 3, 1910, respectively. Howton, one of the creditors of the bankrupt D. F. Staggs, had obtained a judgment on April 26, 1910. But this established the indebtedness as of that date only (*Yeend v. Weeks,* 104 Ala. 331, 16 South. 165, 53 Am. St. Rep. 50), and so, by averment and proof, complainant has shown that the bankrupt had become indebted to Howton in 1901 by reason of the breach of a warranty of title in a deed of land made at that time by the bankrupt to Howton. This was the cause of action on which the suit had been brought and for which the judgment of April 26, 1910, had been rendered, and constituted Howton a creditor from the date of the deed.—*Gannard v. Eslava,* 20 Ala. 732; *McLemore v. Nuckolls,* 37 Ala. 662; *Anderson v. Anderson,* 64 Ala. 403; *Kelly v. McGrath,* 70 Ala. 75, 45 Am. Rep. 75.

Howton discovered the defect in his title in 1907 and began to press his claim against the elder Staggs on account of the breach of warranty in 1908. In December, 1909, he brought his suit. Two months previously Staggs had conveyed 80 acres to his elder son. One month later he conveyed 35 acres, the remainder of the tract, to his younger son, at the time a minor. The two tracts together had at one time constituted his home place. At the time of these conveyances he had no other property liable to the payment of his debts. His means were small, and he claims that he sold the land to provide for his necessities. We would not deny his right so to provide. But his testimony is that, aside from Howton's claim against him, he was indebted in an amount less than $50 all told. The burden is upon the defendants to show the bona fides of the transactions

(*Russell v. Davis,* 133 Ala. 655, 31 South. 514, 91 Am. St. Rep. 56), and the circumstance that they were had ·between near relatives calls for a closer scrutiny than where strangers are engaged (*Davis v. Vandiver,* 160 Ala. 454, 49 South. 318, and cases cited). Upon a survey of the evidence shown in the record, we have been unable to avoid the conclusion that the Staggs, father and sons, grantor and grantees, were moved to the conveyances under consideration by the pressure of the Howton claim, and had a common purpose to put the property beyond its reach. Such being the case, the transactions must be annulled as to all existing complaining creditors (*Lehman v. Kelly,* 68 Ala. 192) and subjected to the payment of the grantor's just debts.

Appellee has something to say of Howton's inequitable conduct, after discovery of the fact that Staggs had no title to the land sold in 1901, in refusing to accept a refund of the purchase money, interest, and taxes paid by him in the meantime upon condition, which Staggs attached, that Howton would reconvey the land. Of Howton's conduct in the premises, so far as disclosed by the evidence in this record, nothing more can be said than that it exhibited an unbending, unsympathetic insistence upon his legal rights. Consideration of all such rights was foreclosed by the judgment which he recovered in the law court.

Again, we find a suggestion to this effect: The premises constituted the homestead of the senior Staggs, were exempt, and hence no injury resulted to his creditors by its conveyance with whatever motive. The conveyances, as has been stated, were made in October, 1909, and January, 1910. Early in 1907 Staggs had moved to Bessie Mines, in a distant part of the county, where he built a combination storehouse and dwelling in which he lived and carried on a mercantile business.

He says he left a part of his household goods stored in a building on the old home place. After the destruction of his place at Bessie Mines in June, 1909, he went to live with his elder son, the defendant J. T. Staggs, for a few months, and then, from the 1st of October, 1909, to August, 1910, he lived at Virginia Mines, whence he moved to Tuscaloosa county, where he lived until March, 1911, when he rented that part of the old place which he had conveyed to his younger son, the defendant L. P. Staggs, and upon which was the dwelling, and has lived there since. During the interval between his removal to Bessie Mines and his attempted conveyance, the property was rented out. He filed no declaration of claim of homestead exemption. Section 4192 of the Code provides that: "When a declaration of claim to a homestead exemption has been filed in the office of the judge of probate, leaving the homestead temporarily, or a leasing of the same, shall not operate an abandonment thereof, or render it subject to levy and sale; but the right thereto shall remain the same as if the actual occupancy thereof had continued." It is clear on the facts stated that, during approximately three years prior to the time of the conveyances of this property, the owner had not been in its actual occupancy as a homestead. Actual occupancy as a home, except where declaration is filed under the statute, is essential to the validity of a claim of exemptions.—*Land v. Boykin*, 122 Ala. 627, 25 South. 172. It follows that the property was not exempt to the grantor at the time of the deeds.

In the answer of the defendant L. P. Staggs and in the proof it appeared that the 35-acre tract conveyed to him was at the time subject to a mortgage in favor of the estate of J. S. Wilkey, deceased. The validity of this mortgage as conferring a title paramount to that

brought forward and to be enforced by the bill was not denied, nor will that incumbrance be affected by any proper decree to be rendered.  Wilkey's personal representatives, heirs, or distributes claiming under a prior, independent, paramount, and undisputed title, it was not necessary that they be made parties to a controversy in which they had no interest.—15 Encys. Pl. & Pr. 605; *Wells v. Am. Mort. Co.,* 109 Ala. 430, 20 South. 136.

The decree will be reversed, and the cause remanded to the chancery court, where a decree will be rendered granting the relief prayed.

Reversed and remanded.  All the Justices concur.