R.G. COPE, JR., INC. ALLEGED TRANSFEREE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
R. G. Cope, Jr., Inc. v. Commissioner
Docket No. 1261-80.
United States Tax Court
T.C. Memo 1984-476; 1984 Tax Ct. Memo LEXIS 189; 48 T.C.M. (CCH) 1053; T.C.M. (RIA) 84476; September 10, 1984. *189 Properties were transferred from taxpayers R and A in 1976. By late 1976, petitioner, a corporation owned by the son of R and A, held title to all those properties. Respondent thereafter determined deficiencies against the transferors. Held, petitioner is liable as a transferee for the income taxes due from R and A for the taxable years 1972 through 1975. L. Bruce Ables, for the petitioner. Shuford A. Tucker, Jr., for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: By statutory notice dated December 4, 1979, respondent determined that petitioner, as transferee of the assets of Robert *190 G. Cope and Allene D. Cope, is liable for deficiencies in Federal income taxes and additions thereto in the following amounts: Additions to Tax
Year
Deficiency
Sec. 6653(a) [1]
Sec. 6651(a)(1)
1972
$639.71
$31.99
1973
2,143.91
107.20
1974
1,985.67
99.28
496.42
1975
32,512.09
1,625.60
8,128.02
The sole issue for decision in whether petitioner is liable as a transferee for the unpaid taxes and additions to taxes of Robert G. Cope and Allene D. Cope. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner R.G. Cope, Jr., Inc. (hereinafter referred to as petitioner) is an Alabama corporation with a principal place of business in Huntsville, Alabama at the time its petition was filed with this Court. Petitioner is in the business of residential building. [2] The president and principal shareholder *191 of petitioner is R.G. Cope, Jr. (hereinafter referred to as R.G.). The parents of R.G. are Robert G. Cope (hereinafter referred to as Robert) and Allene D. Cope (hereinafter referred to as Allene), husband and wife, whose residence at the time of the stipulation in this case was 1116 Harrison Street, Huntsville, Alabama. During the taxable years 1972 through 1975, Robert owned and operated a real estate rental and sales business and a used car retail sales business. Robert and Allene filed their 1972 and 1973 joint income tax returns with the Director, Atlanta Service Center. Their 1972 tax return was filed on March 5, 1975 and their 1973 return was filed on June 18, 1974. Robert and Allene did not file income tax returns for the taxable years 1974 and 1975. By letter dated June 16, 1975, the District Director of Internal Revenue for the Birmingham, Alabama district informed Robert and Allene that their 1973 Federal income tax return was under examination. During 1975 and 1976, respondent conducted an examination concerning the tax liability of Robert and Allene for the taxable years 1972 through 1975. As a result *192 of respondent's examination of the income tax liability of Robert and Allene for the taxable years 1972 through 1975, income tax audit changes were determined and on December 19, 1976, Robert and Allene executed a Form 4549, indicating their consent to immediate assessment and collection of the following taxes and additions to taxes: Additions to Tax
Year
Deficiency
Sec. 6653(a)
Sec. 6651
1972
$639.71
$31.99
1973
2,143.91
107.20
1974
1,985.67
99.28
496.42
1975
32,512.09
1,625.60
8,128.02
The taxes and additions to taxes agreed to by Robert and Allene for the taxable years 1972 and 1973 were assessed on February 2, 1977. The taxes and additions to taxes agreed to by Robert and Allene for the taxable years 1974 and 1975 were assessed on March 21, 1977. On May 19, 1977, the Internal Revenue Service filed a Federal tax lien on all real property of Robert and Allene located in Madison County, Alabama. This lien concerned the assessed income taxes, including interest and penalties thereon of Robert and Allene for the taxable years 1972 through 1975 in an amount totaling $50,292.09. The respondent attempted to collect the taxes set forth *193 in the Form 4549 from Robert and Allene, but after November 30, 1976, no assets or other avenues of collection with regard to Robert and Allene were available to respondent. None of the taxes and penalties reflected on the Form 4549 or any interest on these amounts has been paid. In 1969, Robert's financial difficulties began. On November 12, 1974, a $105,445.66 judgment against Robert in favor of the First National Bank of Huntsville was filed with the Probate Court in Madison County, Alabama. On May 5, 1975, a $48,851.23 judgment against Robert in favor of the Bank of Huntsville was filed with the Probate Court in Madison County, Alabama. In 1975, R.G., aware of the financial difficulties of his parents, began discussions with third parties concerning the transfer-sale-foreclosure of his parents' property. The following letter from Morris Anderson of First Federal Savings and Loan Association of Huntsville to R.G. was submitted as evidence in this case: Mr. Robert G. Cope, Jr. 106 Central Avenue, SE Huntsville, Alabama 35801 Re: Loan #9513 and #9515 Dear Glen: You and I have talked several times concerning the problem we are having with your dad's loans. The balance *194 owed on #9513, which is his residence, is $48,856.99. The loan is delinquent $350.00 and this month's payment is due. Loan #9515's balance is $67,014.25. It is delinquent $841.00 and this month's payment is due. If you could make arrangements to purchase Loan #9515, we would be willing to release from that particular loan the property located at 1205 Monterry Drive, assuming that you would assume the loan on this property. After you had foreclosed on #9515 and the one year redemption rights had expired, we would be willing to look at this property again provided you and your wife could execute a good, first mortgage on the property, and make the maximum loan we could based on the current appraisal of said property. We realize that you have made payments on these loans and that certain monies are owed to you, and we feel that by our selling you our loan #9515, you would be in a position to recover possibly what might be at this time a loss. Please let me know when it is time to prepare the release and the sale agreement on the mortgage. Sincerely, (Signed) Morris W. Anderson Exec. Vice Pres. & Secretary No sales agreement, new mortgage, or documentation of a $67,014.25 *195 purchased release on any loan was provided for our consideration. The Monterrey property was released from inclusion on a mortgage containing several other parcels of property on January 5, 1976. The release agreement contained only the standard clause that the consideration paid for the release was: the sum of TEN AND NO/100 ($10.00) DOLLARS and other good and valuable considerations, cash in hand paid to the undersigned by Allene D. Cope * * *. Between them, Robert and Allene owned several parcels of real property, one of which was owned by Allene and located at 1205 Monterrey, Huntsville, Alabama (hereinafter referred to as the Monterrey property). On January 5, 1976, Robert and Allene executed a deed conveying the Monterrey property to the petitioner. The deed provided, in part, that Allene and Robert: * * * in consideration of the sum of TEN AND NO/100 ($10.00) DOLLARS * * *, and other good and valuable considerations * * * have this day given, granted, bargained, sold and conveyed and do by these presents hereby give, grant, bargain, sell and convey unto [the petitioner] the following described real estate * * *. SUBJECT, HOWEVER, to a mortgage in favor of First *196 Federal Savings and Loan Association[.] * * * The fair market value of the Monterrey property on January 5, 1976, was $98,000 and its basis was $85,000.As of January 5, 1976, the Monterrey property was encumbered by a mortgage with a loan balance of $49,116.64. This mortgage, executed on May 6, 1971, made both Robert and Allene personally liable for mortgage payments and provided tht the transfer of ownership of the property would not affect their liability under the mortgage. On January 6, 1976, petitioner assumed the mortgage on the Monterrey property. On the same day, Allene and R.G., in his capacity as president of R.G. Cope, Jr., Inc. executed an agreement with regard to the transfer of the Monterrey property to petitioner. Under the agreement, Allene agreed to deed the Monterrey property to the petitioner. Petitioner's receipt of the property and its assumption of the mortgage gave it an equity of $48,883.36 in the property. The agreement provided for petitioner's assumption and payment of all mortgage payments, and petitioner agreed to catch up on back payments, including back taxes. No evidence was submitted to show that such back payments actually were made *197 by the petitioner on or before January 6, 1976. The agreement provided further that: 1. The Corporation [petitioner] will make all payments to First Federal Savings and Loan Association of Huntsville. 2. That the Corporation will immediately put the house on the market for sale. 3. That Cope [Allene] will advise the Corporation of all repairs needed on the house in contemplation of the sale. 4. That Cope will deliver to the Corporation a list of all draperies and fixtures that are to remain and be a part of the house in any sale. 5. That if a sale is consummated by the Corporation, Cope and her husband agree to vacate the property within 60 days of the date of the sales contract. * * * 8. When the property is sold, it is agreed that Cope will be entitled to receive from the Corporation a sum equal to the difference between the sales price of the house less the mortgage payoff, real estate commissions, costs of repairs, any interest paid by the Corporation on monies other than the mortgage and any and all expenses of any nature including the mortgage payments, or any type expenses whatsoever incurred by the Corporation while owning the property, and also in *198 connection with the sale of the property. 9. That Cope will make an effort to find property which is suitable to her for renovation or building as soon as practical. 10. That the Corporation will renovate the property selected by Cope, or if a new house is decided to be built by Cope, the Corporation will work with her in the purchase of the lot and in the construction of the house and the obtaining of necessary financing. * * * Despite this agreement, after petitioner sold the Monterrey property, no sale proceeds were paid to Allene and no house was deeded to or built for her to purchase. An oral agreement between Allene and petitioner was also made in connection with the Monterrey property transfer. This agreement concerned petitioner's support of Allene and Robert. Neither Robert nor Allene kept records of amounts paid to them or paid for their benefit under the oral agreement, but relied on R.G. to provide them information. An account was set up on petitioner's corporation books to list the amounts paid to or for the benefit of Allene and Robert. This was called "Listing of Disbursement and Receipts-Loans and Expenses Paid for Jack Cope" (hereinafter referred *199 to as "the Jack Cope Account"). [3] Four entries to this account are dated earlier than 1976 and total the amount of $10,550, as follows: two described as loans to Jack Cope in the amounts of $2,000 and $5,000, dated March 12, 1973 and August 8, 1974, respectively; one, dated November 4, 1975, described as a loan to Robert in the amount of $3,000; and one dated November 14, 1974 listed as to "Jerry-Stapp-atty's fee" in the amount of $550. In 1976, the account apparently became quite active and several hundred entries appear on this account dated from 1976 through 1981. Total disbursements debited to this account through December 31, 1981 equal $76,050.85 and total receipts credited equal $44.76. [4] By 1977, when the Internal Revenue Service had filed a tax lien against Robert and Allene, petitioner had abandoned hope of being repaid, but continued to advance money to them. After the transfer of the Monterrey property, Robert and Allene still owned 12 other *200 properties (hereinafter referred to as the 12 tracts). [5] As of the dates in 1976 when these properties were transferred by Robert and Allene or were foreclosed upon by the party holding the mortgage rights, the total fair market value of all properties was $123,324.54 subject to various mortgages thereon in the total amount of $96,529.94. Robert was personally liable on all mortgages on the 12 tracts transferred to or foreclosed on by petitioner in 1976. The fair market value of the properties exceeded the mortgage balances to which they were subject by $26,794.60. *201 The history and disposition of the aforementioned mortgages on the 12 tracts is as follows. On May 6, 1971, a mortgage was executed between First Federal Savings and Loan Association of Huntsville and Robert, Allene, and the Cope Agency, Inc. (apparently Robert's corporation). The mortgage was on ten of the 12 tracts and in the amount of $88,000. On January 5, 1976, First Federal Savings and Loan Association of Huntsville, transferred and assigned this mortgage to petitioner. Petitioner foreclosed on the mortgage on February 9, 1976 and then, on this same date, purchased the ten tracts for $86,529.94 at a foreclosure sale. On October 27, 1976, a document was executed by Associates Capital Corporation, assigning to petitioner a mortgage on the remaining two tracts that had been entered into by Robert and Allene on July 21, 1972 for the original amount of $11,520. On November 30, 1976, petitioner foreclosed on this mortgage and, on this same date, purchased the two tracts at a foreclosure sale for $10,000. Robert and Allene were rendered insolvent by or were insolvent on the date of these foreclosure transactions.Petitioner had an equity interest in the 12 tracts of $26,794.60 *202 immediately after the foreclosure sales. [6]
In April 1976, Robert and Allene moved to a house on Harrison Street, Huntsville, Alabama. The Harrison Street house is owned by petitioner.During all the time Robert and Allene have lived in this house, the net fair rental value has been $465 per month. OPINION Section 6901 provides a method of collecting from a transferee of property, amounts owed for tax deficiencies of the transferor. This section merely provides a secondary method for enforcing the existing liability of the transferor and does not create a separate liability. Alexander v. Commissioner,61 T.C. 278, 292 (1973); Mysse v. Commissioner,57 T.C. 680, 700-701 (1972). Petitioner's liability as a transferee depends on the substantive law of Alabama, where the transfers took place. Commissioner v. Stern,357 U.S. 39 (1958). *203 Respondent has the burden of proving petitioner's liability as a transferee by establishing all facts necessary to indicate transferee liability at law or in equity.Section 6902(a); [7] Rule 142(d). To support his contention that petitioner is liable as transferee for the income taxes of Robert and Allene, respondent relies on the Alabama fraudulent conveyances statute which provides that a conveyance of real property "made with intent to hinder, delay or defraud creditors" is void against such creditors. ALA. CODE Sec. 8-9-6 (1975). [8] Under this statute, an existing creditor may set aside a conveyance either because of actual fraud or on account of what is termed constructive fraud. J.C. Jacobs Banking Co. v. Campbell,406 So.2d 834 (Ala. 1981); Smith v. Wilder,270 Ala. 637, 120 So.2d 871, 882 (1960). *204 For a conveyance to be declared fraudulent under Alabama law, the concurrence of three elements must be shown: (1) a creditor to be defrauded, (2) a debtor intending to defraud, and (3) a conveyance of property out of which the creditor could have realized his claim or some portion thereof. Roddam v. Martin,285 Ala. 619, 235 So.2d 654, 657 (1970); *205 Adkins v. Bynum,109 Ala. 281, 19 So. 400 (1896). Constructive fraud is fraud arising as a presumption of law from the fact that an insolvent debtor has made a voluntary conveyance of his property to avoid its transfer to a creditor. Douglass Cotton Oil Co. v. Alabama Machinery & Supply Co.,205 Ala. 51, 87 So. 342 (1920). As stated by the Alabama Supreme Court in Smith v. Wilder,120 So.2d at 882: Constructive fraud * * * is based on facts and circumstances which the courts have said constitute legal fraud irrespective of actual intent. The term "constructive fraud" is generally used in referring to those instances where a grantor, indebted at the time, conveys property on a good as distinguished from a valuable consideration. Such conveyances are frequently referred to simply as voluntary conveyances. Under Alabama law, the date of the wrongful act, and not the filing of a suit or the recovery of a judgment fixes the status and rights of the parties. Roddam v. Martin,supra. In scrutinizing a transaction assailed *206 as fraudulent, the fact that a transaction was between "parties nearly related" calls for closer examination than where a transaction is between strangers. Russell v. Davis,133 Ala. 647, 31 So. 514 (1901); Woodall v. Kelly,85 Ala. 368, 5 So. 164 (1888). According to Alabama law, the burden is on a creditor who alleges actual fraud to prove it. Birmingham Trust & Savings Co. v. Shelton,231 Ala. 62, 163 So. 593 (1935); see Smith v. Wilder,supra.With respect to a "voluntary conveyance," the creditor must show his debt antedated the conveyance. After these elements are shown, the burden then shifts to the transferee to show that the transferred property was a "fair equivalent" in satisfaction of an existing debt due him. If the transferor was "insolvent, failing or financially embarrassed" when the transfer was made, the transferee must show that he paid a consideration to the transferor that was both "valuable" and adequate. Smith v. Wilder,120 So.2d at 883. [9] Gross inadequacy of consideration, *207 however, is a factor justifying a conclusion that there was an actual intent to hinder, delay or defraud creditors. J.C. Jacobs Banking Co. v. Campbell,406 So.2d at 844; Smith v. Wilder,supra.
Respondent argues that the facts as stipulated place the burden on petitioner to show that the transfers of the Monterrey property and the 12 tracts were supported by valuable and adequate consideration. Respondent contends that the insolvency of Robert and Allene at the time of the transfers, combined with R.G.'s knowledge of his parents' financial problems, and with the inadequacy of consideration paid by petitioner *208 for the transfer to it of virtually all the property of Robert and Allene, show that the transfers would be set aside under Alabama law in favor of his claim, and, therefore, that petitioner is liable as a transferee for the deficiencies in and additions to tax of Robert and Allene. Petitioner argues that no fraudulent conveyance was made. Petitioner contends that all transfers were made for valuable consideration and, additionally, that it suffered significant losses on the transactions. Petitioner maintains that at the time of conveyance, Robert and Allene were unaware a tax liability would be assessed against them and, therefore, that no fraudulent intent can be shown.Finally, petitioner claims that respondent could have exercised a right of redemption of the 12 tracts in the one year period after petitioner's foreclosure on the properties, and that respondent is estopped from otherwise setting aside the transactions. We find petitioner liable as a transferee for the income taxes of Robert and Allene. As a preliminary matter, we dismiss petitioner's contention that respondent cannot assert transferee liability because all remedies against Robert and Allene were not exhausted. *209 [10] See W.W Cleveland v. Commissioner,28 B.T.A. 578 (1933), affd. per curiam 77 F.2d 184 (5th Cir. 1935). The parties stipulated that the transferors, Robert and Allene, were insolvent at the time of or were made insolvent by the transfers and that after November 30, 1976, no assets or avenues of collection were available for respondent from Robert and Allene. We consider this stipulation binding, and as such, it is a conclusive admission by petitioner that no other assets were available out of which respondent could satisfy the tax liability of Robert and Allene. Rule 91(e). Respondent was a creditor of Robert and Allene at the time of the transfers on January 5, 1976, February 9, 1976, and November 30, 1976, because the obligations to pay taxes had accrued for the years at issue. The stipulation in the present case shows the parties in agreement concerning the years and amounts *210 of taxes owed by Robert and Allene, further evidencing respondent's creditor status at the time of the transfers. Cf. Alexander v. Commissioner,61 T.C. at 293; Smith v. Wilder,120 So.2d at 883; Roddam v. Martin,supra.
Petitioner's reliance on Weil v. Commissioner,91 F.2d 944 (2d Cir. 1937) and on United States v. Seyler,142 F. Supp. 408 (W.D. Pa. 1956) is misplaced. In Weil, the Court of Appeals held that shareholder-creditors of a dissolved corporation were not liable for the tax liability of the transferor corporation because state law did not give the government priority over other general creditors prior to the assessment of taxes. Although petitioner attempts to argue it was a creditor of Allene and Robert, in view of the fact that petitioner is controlled by R.G., the son of Allene and Robert, we cannot view the transfers as arms-length transactions. See Russell v. Davis,supra.Under the facts of this case, in view of the close family ties and the admittedly "moral" obligation R.G. felt he had to support his parents, we do not think that R.G. or *211 his corporation was in the position of being a general creditor of Robert and Allene. Although the government may not have been entitled to any priority over other creditors prior to the assessment of taxes, it was a general creditor. Similarly, Seyler does not stand for the proposition that in order for transferee liability to exist, taxes must have been assessed prior to the transfer. Seyler dealt with an instance where the liability for taxes had not yet accrued. The court in Seyler acknowledged, however, that stockholder-distributees could be charged with notice of a subsequently-assessed tax constituting a potential liability at the time of the distribution. United States v. Seyler, 142 F.Supp. at 410. Thus, in Seyler, although distributions were made prior to the end of the fiscal year in which liability for taxes arose, the transferees were liable because there had been a potential tax liability, and were charged with liability to the full extent of the amounts received. In the case at issue here, at the times the transfers of the Monterrey property and the 12 tracts were made, liability for taxes had accrued. The series of transfers *212 leading to the insolvency of Robert and Allene evidences an intent to defraud the respondent. The transfer of the Monterrey property and the foreclosure-sales of the other tracts were not made at arm's-length and thus are subject to close scrutiny. Russell v. Davis,supra;Woodall v. Kelly,supra.It is clear that the transactions in question cannot withstand such scrutiny. In the foreclosure-sales, petitioner foreclosed on the mortgages of its president and principal shareholder's parents and then bought the properties itself, paying the money to itself. As previously stated, Robert, Allene, and R.G. were a tingtly-knit family. Although Robert testified that he kept his 1974 and 1975 financial problems to himself, he admitted discussing earlier difficulties with Allene and R.G. The "Jack Cope account" in petitioner's books indicates that petitioner loaned Robert money in 1973, 1974, and 1975. R.G. testified that he was aware of the 1974 and 1975 foreclosures against his father, and that his father called him twice a week to discuss business matters. All the facts in the record show an intent to shield the property of Robert and Allene *213 from outstanding debts. See Russell v. Davis,31 So. at 516. Both R.G. and Robert were experienced in real estate dealings and should have been aware of the potential tax liability that can arise from real estate transactions. They were doubtless aware, also, of the different ways title to property can be transferred. Petitioner argues that because title to the 12 tracts was transferred at public foreclosure sales, the transfers could not be fraudulent under Alabama law. First, this series of transactions is subject to the special scrutiny necessary in transactions between close relatives. Russell v. Davis,supra.Secondly, from all the evidence it appears that the transactions in question were orchestrated by the Copes in order to make abusive and fraudulant use of the processes of the Alabama courts. See Comer v. Heidelbach,109 Ala. 220, 19 So. 719 (1896). We conclude, therefore, that although the 12 tracts were not directly transferred from Robert and Allene to the petitioner, petitioner nevertheless will be treated as if it were a direct transferee. Furthermore, we note that under such circumstances, fespondent *214 certainly is not limited in remedies to an exercise of his right to redeem the 12 tracts within one year of the foreclosure sale. Petitioner's argument that it paid consideration in an amount greater than the fair market value for the 12 tracts is not supported by the evidence. As stipulated, the total fair market value of the Monterrey property and the 12 tracts was $221,324.54. Petitioner argues in one part of its brief that the total pre-transfer consideration paid for these properties was $245,171.83 and in another part argues that it invested $238,699.83 in the properties. [11] The first figure is based on petitioner's inaccurate addition of the following items: Amount
Source argued by petitioner
$6,472.00
Renovation expense on Monterrey property
10,550.00
Mortgage note amounts advanced by petitioner to
Robert
15,489.00
Mortgage note amount dated January 5, 1976
49,116.64
Mortgage assumed on Monterrey property
67,014.25
Purchase price of a mortgage on all properties
[12] 96,529.94
Mortgage or mortgages assumed on transfer of 12
tracts
Total $245,171.83
The $238,699.83 figure is based on petitioner's addition of all items except *215 for the $6,472 amount. Thus, petitioner argues its investment in the properties is either $23,847.29 or $17,375.29 over the fair market value. [13]
Respondent argues that petitioner is entitled to include in its calculations of consideration paid on the transfers only $145,646.58 of this amount, calculated as follows: 49,116.64
Mortgage assumed on transfer of Monterrey
property
86,529.94
Amounts paid or assumed in the assumption-
10,000.00
foreclosure-sale transactions for the 12 tracts.
Total $145,646.58
Thus, respondent argues *216 that petitioner had an equity of $75,677.96 in the transferred properties. We agree with respondent's calculation. First, the $10,550 and $15,489 amounts are not mutually exclusive. R.G. testified at trial that the former amount was part of the latter. Second, petitioner has not shown that the $15,489 amount was an obligation constituting consideration for the transfer of Robert's and Allene's properties. See Smith v. Wilder,supra.Third, the $6,472 is a post-transfer expense and thus not includable in out calculations of petitioner's equity in the properties at the time of transfer. [14] Fourth, the petitioner has not shown that it paid $67,014.25 to First Federal Savings and Loan of Huntsville. It has produced only a letter evidencing, at bast, a proposal to make such payment. The Monterrey property was released from the mortgage containing the 12 tracts on January 5, 1976. There is no evidence of consideration paid by petitioner for this release.Petitioner's assertion of the $67,014.25 payment fails without further proof. Furthermore, petitioner has not shown that it paid any sums in connection with the transfers for back taxes or outstanding mortgage *217 payments of the loans. With respect to the Monterrey property transfer, petitioner argues that it realized no economic gain because of amounts it had previously loaned to Robert and because of the concurrent agreement which provided that any extra amount realized on the sale of the property would be given back to Allene and Robert. The agreement, however, was never follows. The $15,489 note executed by Robert on January 5, 1976, although called a "mortgage" note, neither proves that the advances made prior to this date were consideration for the property received, nor shows that the amounts lent to Robert were not gifts made without expectation of repayment. We reiterate that, from all the evidence in the record, it is clear that the petitioner never had a reasonable expectation of being repaid for any of its pre- or post-transfer advances indicated in the "Jack Cope account" and, furthermore, it is apparent that R.G. supported his parents, albeit through his corporation, for purely personal, rather than business purposes. *218 It is clear that, had the various properties not been transferred, they could have been used to satisfy the tax liability owed by Robert and Allene. See Roddam v. Martin,supra.Calculated as set forth in the margin below, the fair market value of the properties transferred over the amounts of outstanding mortgages assumed totaled approximately $75,678, certainly an amount sufficient to satisfy the tax liability of Robert and Allene for the years at issue. [15] Furthermore, the difference between the liabilities assumed and the fair market value of the properties transferred is great enough to warrant our conclusion that the consideration was inadequate, further justifying our finding that an actual intent to hinder, delay, or defraud creditors was present in this case. See J.C. Jacobs Banking Co. v. Campbell,406 So.2d at 844; Smith v. Wilder,supra.Under Alabama law, it is clear that respondent has proved the elements necessary to establish that the conveyance was "made with intent to hinder, delay or defraud creditors." See Roddam v. Martin,235 So.2d at 657. *219 Although we have found that actual fraudulent intent existed, we also note that the transfers would have been considered voidable under the Alabama doctrine of constructive fraud, because made by insolvent debtors for inadequate consideration. See J.C. Jacobs Banking Co. v. Campbell,supra;Smith v. Wilder,supra;Douglass Cotton Oil Co. v. Alabama Machinery & Supply Co.,supra. The fair market value of the property conveyed exceeded the amount of mortgages assumed by $75,677.96. This amount, under the circumstances of this case, is so grossly inadequate as to raise the presumption of fraud under Alabana law. See J.C. Jacobs Banking Co. v. Campbell,406 So.2d at 844; Douglass Cotton Oil Co. v. Alabama Machinery & Supply Co.,87 So. at 344. Petitioner is liable as a transferee for the income taxes of Robert and Allene, despite its argument that it was not aware of their tax liability at the time of the transfers. See Papineau v. Commissioner,28 T.C. 54, 58 (1957). The taxes had accrued.[16] Accordingly, we hold that petitioner is liable as a transferee *220 under section 6901 for the entire income tax deficiency of Robert and Allene. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 in effect during the taxable years in issue, unless otherwise indicated. All references to "Rules" are to the Tax Court Rules of Practice and Procedure.↩
2. Its activities include real estate development.↩
3. Jack Cope and Robert are the same individual. ↩
4. A "mortgage" note dated January 5, 1976 was executed by Robert in favor of petitioner in the amount of $15,489 with a listed interest rate of nine percent per annum.↩
5. We find that 12 tracts were still owned after the transfer of the Monterrey property based on the confusing array of stipulated items that were presented for our consideration.One mortgage on part of the 12-Tract aggregate originally covered 10 "tracts," the last of which apparently was composed of at least two or three properties. One of these two or three properties was the Monterrey property which, on January 5, 1976, was removed from this mortgage. Another part of the tenth tract was also excluded from the foreclosure disposition; however, there was property still remaining in tracts 1 through 10 at the ultimate foreclosure disposition. Another mortgage covered two other tracts of land. Thus, we will refer to the properties originally owned by Robert and Allene other than the Monterrey property as "the 12 tracts."↩
6. This amount is based on the difference between the fair market value of the 12 tracts, $123,324.54, and the amounts paid by the petitioner to purchase the properties at the foreclosure sales, $10,000 and $86,529.94.↩
7. Section 6902 provides, in part: (a) Burden of Proof.-In proceedings before the Tax Court the burden of proof shall be upon the Secretary to show that a petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax.↩
8. ALA. CODE Sec. 8-9-6 (1975) provides: Conveyances or assignments of property, etc., to hinder creditors, etc. void.
All conveyances or assignments in writing, or otherwise, of any estate or interest in real or personal property and every charge upon the same made with intent to hinder, delay or defraud creditors, purchasers or other persons of their lawful actions, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, action commenced or judgment suffered with the like intent, against the persons who are or may be so hindered, delayed or defrauded, their heirs, personal representatives and assigns are void.↩
9. The insolvent or financially embarrassed state of a grantor is important to note because "valuable" consideration, although it must be substantial rather than nominal, can be inadequate. Thus, when a transfer is made by an insolvent or financially embarrassed grantor for new consideration, rather than to satisfy a preexisting debt to a grantee, both valuable and adequate consideration is required to avoid a preexisting creditor's claim of constructive fraud. See Smith v. Wilder,270 Ala. 637, 120 So.2d 871↩ (1960).
10. In order to show this, petitioner points to a Florida property, mentioned at trial and, additionally, brings up Allene's salary from a job, also mentioned at trial. No documentary evidence was introduced to show the existence or value of these alleged assets.↩
11. In its brief, petitioner states the total pre-transfer consideration as $245,173.83. As a matter of convenience, however, we have used the correctly added figure of $245,171.83. Petitioner additionally makes the argument that it invested $310,756.83 in the properties as of December 31, 1981. Our focus in the present case, however, is the pre-transfer consideration paid for the properties. ↩
12. Petitioner has variously listed this amount as $96,524.94; $96,526.94; and $96,529.44. ↩
13. We note that the petitioner's addition and subtraction in stating its arguments can best be characterized as approximate.↩
14. Furthermore, it is not at all clear from the evidence submitted either how this total was derived or how it related to the properties transferred.↩
15. The calculation of this amount can be shown as follows: Fair market value of transferred properties: Monterrey
$ 98,000.00
12 Tracts
123,324.54
Total
$221,324.54
$221,324.54
Mortgages assumed on transfer: ↩
Monterrey
$49,116.64
12 Tracts
96,529.94
Total
145,646.58
(145,646.58)
Benefit to transferee
$75,677.96 16. We note that the extent of transferee liability as determined under Alabama law includes the full amount of the deficiencies in the present case. See Commissioner v. Stern,357 U.S. 39 (1958). Respondent has not shown that under Alabama law, petitioner would be liable for interest on the deficiencies in an amount greater than the excess of the fair market value over consideration given for the transferred assets. See Lowy v. Commissioner,35 T.C. 393, 395-397↩ (1960). Accordingly, we find that petitioner's maximum liability as a transferee of the assets of Robert and Allene would be $75,677.96.