406 So.2d 834 (1981)
J. C. JACOBS BANKING CO., a Corp.
v.
W. Loy CAMPBELL.
W. L. GLADISH, Jr. and Johnnie K. Gladish
v.
W. Loy CAMPBELL.
Jessie Sue BYNUM
v.
W. Loy CAMPBELL.
Jessie Sue BYNUM, as Trustee of the Lucy Scott Bynum Trust
v.
W. Loy CAMPBELL.
W. Loy CAMPBELL.
v.
W. L. GLADISH, Jr., et al.
Jessie Sue BYNUM, individually and as Trustee of the Lucy Scott Bynum Trust
v.
Charles W. WANN, individually and as Circuit Clerk of Jackson County, Alabama; Jim Lindsey, individually and as Circuit Clerk of DeKalb County, Alabama; and W. Loy Campbell.
79-296, 79-297, 79-464, to 79-466, and 79-625.
Supreme Court of Alabama.
September 1, 1981.
Rehearings Denied October 30 and November 25, 1981.
*838 L. Tennent Lee, III of Cleary, Lee, Porter, Evans & Rowe and James L. Tatum of Berry, Ables, Tatum, Little & Baxter, Huntsville, for appellant in No. 79-296.
James T. Tatum, Jr. of Berry, Ables, Tatum, Little & Baxter, Huntsville, for appellants in No. 79-287 and appellees Brooks Derrick, Izzy Derrick and Patsy Self in No. 79-466.
Richard F. Ogle of Denaburg, Schoel, Meyerson & Ogle and Carlton Wynn of Hare, Wynn, Newell & Newton, Birmingham, for appellee in Nos. 79-296 and 79-297 and cross-appellant in No. 79-466.
Frank K. Noojin and Charles E. Richardson of Watts, Salmon, Roberts, Manning & Noojin, Huntsville, for appellant in Nos. 79-464 and 79-465.
Frank K. Noojin of Watts, Salmon, Roberts, Manning & Noojin, Huntsville, for appellant in No. 79-625.
L. Tennent Lee, III of Cleary, Lee, Porter, Evans & Rowe, Huntsville, and Jack Livingston, Scottsboro, for appellees Robert D. Word, Jr., George Hunter Payne, and Elizabeth Payne Word, in No. 79-466.
Edward S. Allen and Steven F. Casey of Balch, Bingham, Baker, Hawthorne, Williams & Ward, Birmingham, for amicus curiae St. Paul Title Insurance Co., in Nos. 79-297, 79-296 and 79-466.
EMBRY, Justice.
These consolidated appeals are from judgments entered in an action filed in the Circuit Court of Jackson County on 18 October 1978, by William Loy Campbell, as a creditor of Hugh Otis Bynum, Jr. It sought to have declared void, and set aside as fraudulent, certain conveyances of real property and an assignment of a promissory note by Bynum, and a certain mortgage executed by other parties.

The Facts
In 1972, plaintiff Campbell, at that time a practicing attorney and now a Circuit Judge in Jackson County, lost both his legs as the result of the explosion of a device planted in his automobile which was triggered by his turning the starter switch. In March 1975, on account of the bombing, Bynum was convicted in the Circuit Court of Jackson County of assault with intent to murder Campbell. On 27 October 1975, Campbell filed an action for personal injuries against Bynum seeking damages of $2,000,000 for the injuries and damages suffered as a result of the bombing, and the action resulted in a verdict and a judgment in that amount being entered on 25 May 1978, by the Circuit Court of Jefferson County. The bombing incident and the criminal and civil trials were extensively publicized in various media.
At the time of his conviction in March 1975, Bynum had extensive real property holdings in Jackson County, some of which he owned individually and others which he owned jointly with his sister, Jessie Sue Bynum, who held her interests both individually and as trustee of the Lucy Scott Bynum Trust. Lucy Scott Bynum, another sister of Bynum, was both physically and mentally incapacitated during the entire period of time relevant to these proceedings.
Over a period of many years and prior to his conviction, Bynum had seldom sold any of his individually owned property. Subsequently, however, he departed from this practice and on 30 December 1975, while Campbell's suit for damages was pending, Bynum entered upon a series of transactions whereby in little more than a year's time he disposed of all his real estate holdings. Several of these transactions involved exchanges of real estate jointly owned in undivided one-third interests by Hugh Bynum, Jr., Jessie Sue Bynum, individually, and Jessie Sue Bynum, as trustee. Bynum exchanged his one-third interest in *839 several tracts jointly owned for Jessie Sue's two-thirds interest in other tracts with the net result that Bynum became the sole owner of several tracts which had previously been jointly owned.
In addition to these exchanges, Bynum sold Jessie Sue his one-third interest in four other tracts of land. In addition to all the real estate he already owned individually, Bynum proceeded to sell the parcels of land acquired in the exchanges with Jessie Sue. Among the purchasers of these properties were George Hunter Payne, Robert F. Word, Jr. and wife Elizabeth Payne Word, W. L. Gladish, Jr. and wife Johnnie K. Gladish, Brooks Derrick, Izzy Derrick, and Patsy Self, each of whom was among those named as defendants.
When he learned that these transactions were occurring, Campbell filed in the probate Court of Jackson County a notice, denominated as a lis pendens notice. It described the nature of the personal injury action and stated that the notice was intended to establish a lien upon all real estate in Jackson County owned by Bynum, or in which he had an interest; and further, that any attempt by Bynum to sell, convey, or encumber any lands in which he had an interest would cause irreparable injury to Campbell; and the notice also had the purpose of warning Bynum or any proposed purchaser that no sales or encumbrances of the lands should be made until the conclusion of the personal injury action.

The Case
Several months after judgment in the personal injury action, Campbell filed the action from which these appeals are taken. It sought to void the conveyances and transfers alluded to earlier on the basis they were made with intent to hinder, delay, or defraud him in the collection of damages in the personal injury suit, in violation of Code 1975, § 8-9-6. In addition to the grantees of land from Bynum, the J. C. Jacobs Banking Company was made a party defendant. The bank was mortgagee of the property sold by Bynum to the Gladishes and also assignee of a promissory note negotiated to it by Bynum, who had previously received the note from his sister, Jessie Sue, as partial consideration for one of the conveyances of property to her. By amendment, Campbell added the charge that Bynum and Jessie Sue, individually and as trustee, conspired to hinder, delay, or defraud him, by preventing him, via fraudulent conveyances, from executing against and attaching property assets of Bynum from which collection might be made of the $2,000,000 civil judgment previously obtained by Campbell against Bynum, and for this alleged conspiracy $4,000,000 in compensatory and punitive damages was sought.
A counterclaim was filed against Campbell by the Words and Payne, seeking damages because he filed the purported lis pendens notice.
On 24 January 1979, the Honorable Randall Cole of the DeKalb County Circuit was appointed special trial judge for this case by order of the Chief Justice.
At the pretrial conference on 25 July 1979, the motion of Jessie Sue Bynum, individually and as trustee, for an advisory jury was granted and the case was set for trial; the claims against Jessie Sue, individually and as trustee, were to be tried with an advisory jury and those against all other defendants were to be tried without a jury. Jessie Sue's motion for change of venue was granted and the claims to be heard before an advisory jury were set for trial in DeKalb County.
When those claims were tried, the advisory jury returned a verdict in favor of Campbell and against Jessie Sue Bynum, individually and as trustee for Lucy Scott Bynum. Specifically, the jury found that the eight conveyances made by Bynum to Jessie Sue were void for fraudulent intent in the making of them and should be set aside. In its final judgment on 3 December 1979, the Court adopted the verdict of the advisory jury, but made an independent adjudication that the conveyances were due to be set aside. On the conspiracy claims, the court granted Jessie Sue's motion to dismiss and motion for judgment on the pleadings.
*840 As to the nonjury hearing for the other defendants, the following adjudications were made: The conveyance of real estate to the Gladishes and the assignment of the promissory note by Hugh Bynum to the bank were set aside, with all rights, title, and interest in the land, and rights as payee under the note, restored to Bynum, subject to execution by Campbell in satisfaction of his judgment; requests that the conveyances to the Words, Payne, Self, Brooks Derrick, and Izzy Derrick be set aside were denied.
Campbell filed motions to alter or amend the judgment or, in the alternative, for a new trial or rehearing. By amendment to the final judgment, the trial court granted the relief sought by Campbell as to the mortgage executed by the Gladishes to the bank, declaring it void. All other relief sought in Campbell's post-trial motions was denied.
Bynum and Jessie Sue, in both her capacities, filed motions for alternative relief in the form of judgment notwithstanding the verdict; to set aside findings of fact and conclusions of law; for new trial; and for relief from judgment or order under Rule 60(b), ARCP. All were denied.
Thereafter, Jessie Sue, in both capacities, filed a petition with the trial court seeking an alternative writ of mandamus or rule nisi to require that the record on appeal be prepared and filed by the clerk of the Circuit Court of DeKalb County. By order of 7 May 1980, the trial court determined the appeal should proceed from Jackson County and denied all other relief requested in the petition.
Jessie Sue Bynum, individually and as trustee, appeals from the denial of the alternative writ of mandamus or rule nisi and from the trial court's final judgment of 3 December 1980. The Gladishes and the bank also appeal from the final judgment as amended. Campbell cross-appeals from the judgment in favor of the Words, Payne, Brooks Derrick, Izzy Derrick, and Patsy Self, and from the order dismissing his conspiracy claim. All these appeals and the cross-appeal were consolidated and are here disposed of by this opinion.

The Appeal from Denial of the Writ of Mandamus
As previously mentioned, following final judgment, Jessie Sue Bynum, in her two capacities, petitioned the trial court for an alternative writ of mandamus or rule nisi to compel the clerk of the Circuit Court of Jackson County to transfer records relating to the case tried in DeKalb County to the clerk of the Circuit Court of DeKalb County. Notice of an appeal of this case had already been filed in Jackson County Circuit Court. The petition grew out of some confusion created by the granting of a change of venue from Jackson County to DeKalb County for the trial of the jury arm of the case separated for trial. In the order of 7 May 1980, the trial court, in denying the petition, stated:
Upon the commencement of the jury trial the court sought to clarify the involvement of the two clerks' offices in the case and it was agreed by counsel and the court that the DeKalb County Circuit Clerk could duly function as clerk during the trial of the case. This was consistent with the general understanding of the court and counsel that the case retained its identity as a Jackson County Circuit Court case although the trial was being conducted in DeKalb County.
A petition by Jessie Sue Bynum filed in this court seeking the same relief was denied without written opinion on 14 May 1980. Her appeal from the denial of that relief by the trial court again seeks the same relief.
The appeal from Jackson County Circuit Court by her has been accepted and considered by this court. Presumably, her purpose in seeking the processing of an appeal from both counties was to insure that her appeal would not be dismissed as proceeding from the wrong court.
Where the relief sought by petition for writ of mandamus has already been afforded, the issue is moot and will not be reviewed. State ex rel. Black v. Foster, 238 *841 Ala. 2, 189 So. 66 (1939). This court will not decide questions after a decision regarding them has become useless. Byrd v. Sorrells, 265 Ala. 589, 93 So.2d 146 (1957). Accordingly, the judgment of the trial court denying the alternative writ of mandamus or rule nisi is affirmed.

The Nonjury Trial
An initial examination of the cross-appeals of Campbell from judgments favorable to defendants Brooks Derrick, Izzy Derrick, Payne, Self, and the Words will prove helpful to an understanding of the issues raised in the other appeals. Judgment was rendered in favor of these defendants, each of whom was found by the trial court to have been a bona fide purchaser from Bynum, having paid an adequate consideration while not participating actively or constructively in his fraud.
Campbell contends the trial court misinterpreted applicable law in looking to questions of the adequacy of the consideration paid by appellants, and of their participation vel non in Bynum's fraudulent intent, as determinative of whether the conveyances to them should be set aside.
Code 1975, § 8-9-6, the basis for plaintiff's claim for relief, provides:
§ 8-9-6. Conveyances or assignments of property, etc., to hinder creditors, etc., void.
All conveyances or assignments in writing, or otherwise, of any estate or interest in real or personal property and every charge upon the same made with intent to hinder, delay or defraud creditors, purchasers or other persons of their lawful actions, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, action commenced or judgment suffered with the like intent, against the persons who are or may be so hindered, delayed or defrauded, their heirs, personal representatives and assigns are void.
This statute is declaratory of common law and of generally recognized equitable principles. Fleming v. Kirkland, 226 Ala. 222, 146 So. 384 (1933).
It is Campbell's position that a conveyance is void and due to be set aside as fraudulent, without regard to adequacy of consideration or grantee participation, upon proof of the three elements enumerated in Roddam v. Martin, 285 Ala. 619, 235 So.2d 654 (1970):
[T]he concurrence of three elements is essential before a conveyance can be declared fraudulent under Tit. 20, § 7 quoted supra.... It must be shown that there is: (1) a creditor to be defrauded, (2) a debtor intending to defraud, and (3) a conveyance of property out of which the creditor could have realized his claim or some portion thereof. Adkins v. Bynum, 109 Ala. 281, 19 So. 400....
Plaintiff contends the language of Code 1975, § 8-9-6, consistently with Roddam, speaks only to the grantor's fraudulent intent, noting that no mention is made of consideration or grantee participation in fraud. As the first and third elements of Roddam were not controverted at trial, Campbell claims the conveyances to cross-appellees were due to be set aside once Bynum's fraudulent intent in making them was proved.
The leading decision which articulates the principles governing fraudulent conveyances is Smith v. Wilder, 270 Ala. 637, 120 So.2d 871 (1960), the disputed interpretation of which is critical to the conflicting positions taken by the parties to these appeals. This court in Smith v. Wilder acknowledges that historically the law of fraudulent conveyances in Alabama has been marked by confusion and controversy. In that case, this court analyzed the conflicting case law and enunciated the principles which it deemed correct pertaining to a case of an existing creditor seeking to set aside, as fraudulent, a conveyance by his debtor.
An existing creditor seeking to set aside a conveyance may do so either because of actual fraud or on account of what is termed constructive fraud.
Actual fraud denotes the actual mental operation of intending to defeat or delay the rights of the creditor.

*842 Constructive fraud, on the other hand, is based on facts and circumstances which the courts have said constitute legal fraud irrespective of actual intent. The term "constructive fraud" is generally used in referring to those instances where a grantor, indebted at the time, conveys property on a good as distinguished from a valuable consideration. Such conveyances are frequently referred to simply as voluntary conveyances.
270 Ala. at 649, 120 So. 871.
With respect to the burden of proof, the court made the following declarations:
The burden is upon an existing creditor alleging actual fraud to prove it. Birmingham Trust & Savings Co. v. Shelton, 231 Ala. 62, 163 So. 593.
Where a conveyance is sought to be vacated on the ground that it was voluntary, the burden is upon the complainant to show that his debt antedated the conveyance attacked.
When such proof is made the burden shifts to the grantee to go forward with the evidence.
. . . .
If the evidence shows that the alleged fraudulent grantor was insolvent, failing or financially embarrassed when he made the conveyance, even though the consideration paid by the grantee was a new one, the burden is upon the grantee of showing a consideration both valuable and adequate.
However, if it does not appear that the grantor was insolvent, failing or financially embarrassed when he made the conveyance and the evidence shows that the consideration paid by the grantee was a new one, not resting on prior indebtedness, the only burden upon the grantee is to show that he paid a valuable consideration substantial and not merely nominal.
. . . .
But proof of payment of a present substantial valuable consideration did not in and of itself determine the rights of the parties.
Even though a consideration for the deed was a present valuable consideration, the complainants could have the deed vacated in its entirety by showing the grantor's intent to defraud and a participation therein by the purchaser... with knowledge of such intent or with notice of some fact calculated to put him on inquiry which, if followed up, would have lead [sic] to a discovery of the grantor's fraudulent intent. The burden of making such a showing was on the complainants. McClintock v. McEachin, 249 Ala. 591, 32 So.2d 305, and cases cited.
270 Ala. at 650, 120 So. 871.
Campbell does not contend Bynum was insolvent, failing, or financially embarrassed at the time the conveyances in question were made, or that any of them were made for less than a valuable consideration, substantial and not merely nominal. Thus, cross-appellees assert, under Smith v. Wilder, the issue to be resolved is whether Bynum transferred his property with a fraudulent intent, in which his grantees participated with either actual or constructive knowledge.
Campbell argues, however, that this interpretation of Smith v. Wilder cannot result in harmony between the facts of that case and the result reached by this court in it.
The facts of Smith v. Wilder involved, inter alia, a conveyance from father to son, which plaintiff alleged to be both actually and constructively fraudulent. The trial court found the son gave valuable and adequate consideration and was not a participating grantee, having no knowledge, either actual or implied, of any fraudulent intent on the part of the grantor, his father.
This court affirmed the finding of the trial court that the son had no knowledge of any fraudulent intent on the part of his father, the grantor, or notice of any fact which, if pursued, would have led to discovery of such intent, if any, and the trial court's consonant conclusion that the conveyance should not be set aside in its entirety. Nevertheless, this court remanded the case for a determination of whether the grantor in fact exercised a fraudulent intent, *843 an issue about which the lower court had made no finding. In so doing, this court stated:
The consideration paid by [the son] for the lands covered by the deed in question, although valuable, was in our opinion substantially inadequate. Therefore, we think the trial court should have considered the question as to whether the deed was fraudulently made by the grantor. This because of the equitable doctrine that, when a conveyance is fraudulently made upon a consideration which is valuable, but substantially inadequate, and the grantee is without notice of the grantor's intent and himself intends no fraud, the conveyance will be allowed to stand only as security for the value actually paid. London v. G. L. Anderson Brass Works, 197 Ala. 16, 72 So. 359, and cases cited; Rogers v. Conaway, 226 Ala. 334, 147 So. 152; Morrison v. Federal Land Bank of New Orleans, 232 Ala. 138, 167 So. 288.
270 Ala. at 651, 120 So.2d 871.
Campbell contends that this court, by remanding for a finding regarding the father's intent, confirmed that it is the fraudulent intent vel non of the grantor which determines whether a conveyance should be set aside and, if it is due to be set aside, the court will then decide whether the grantee should receive the benefit of equitable principles. Thus, according to Campbell, the entire analysis regarding consideration and grantee participation in Wilder is simply an equitable inquiry. The inquiry is whether a conveyance due to be set aside because of the grantor's fraudulent intent, is to be set aside in toto when the grantee is found to be a participant in the fraud, or is to be set aside only partially, with the grantee protected to the extent of consideration paid, when found to be an innocent purchaser. In support of this proposition, Campbell points to this court's phraseology that upon a showing of grantee participation the deed could be vacated "in its entirety"; language, he says, that is meaningless unless used for the purpose of making this distinction.
The reasoning employed by Campbell is logically unacceptable. Indeed, the three elements set out in Roddam must be found in order that a conveyance be declared fraudulent under the statutory proceeding whether the plaintiff is proceeding under a theory of actual or constructive fraud. Further proof, however, is required before a conveyance found to be fraudulent is due to be set aside.
Where it appears the transfer in question was made for a valuable consideration, a plaintiff seeking to invoke the protection of Code 1975, § 8-9-6, must show the mutual fraudulent intent of the parties to the transaction. Proof of the grantor's intent alone is insufficient to cause the conveyance to be set aside. See 37 Am.Jur.2d Fraudulent Conveyances § 6 (1954).
The reason for this requirement is that, failing such proof, the grantee is a bona fide purchaser for value who is entitled to keep the fruits of his bargain. See Harris, "Some Aspects of Fraudulent Conveyances in Alabama," 6 Ala.Law. 170 (1945). The cases are replete with holdings that where the grantor is not insolvent, failing, or financially embarrassed, a plaintiff creditor must prove participation by the grantee in the form of knowledge of the grantor's fraudulent intent, or notice of facts putting him on inquiry, which, if followed up, would lead to discovery of the grantor's intent; this would be required in order to set aside a fraudulent conveyance made for present valuable consideration. McClintock v. McEachin, supra; Van Antwerp v. Van Antwerp, 242 Ala. 92, 5 So.2d 73 (1941); London v. G. L. Anderson Brass Works, supra; Ledbetter v. Davenport Bros., 154 Ala. 336, 45 So. 467 (1908); Pippin v. Tapia, 148 Ala. 353, 42 So. 545 (1906); Smith v. Heineman, 118 Ala. 195, 24 So. 364 (1897); Florence Sewing Machine Co. v. Zeigler, 58 Ala. 221 (1877); Crawford v. Kirksey, 55 Ala. 282 (1876).
As previously indicated, and stated somewhat differently, the only recognized exception to this rule is the equitable principle applied when the consideration paid is found to be substantially inadequate.
*844 Generally, inadequacy of consideration is only a "badge" or indicium of fraud. Where, however, the consideration is substantially or grossly inadequate, fraud may be inferred as a matter of law from inadequacy alone. Therefore, when the consideration, though valuable, is found to be substantially inadequate, and the grantee is without knowledge of the grantor's intent or of facts putting him on inquiry as to that intent, the conveyance will be allowed to stand only as security for the value actually paid. London v. G. L. Anderson Brass Works, supra, and cases cited therein; Morrison v. Federal Land Bank of New Orleans, supra.
This equitable principle was correctly determined to be controlling in Wilder, once it was found that the consideration given by the son was substantially inadequate. In applying the principle, however, this court inadvertently failed to recognize the very distinction it had drawn between actual and constructive fraud. Constructive fraud was equated only with voluntary consideration. A valuable but substantially inadequate consideration, however, is also a part of constructive fraud; the mutual fraudulent intent of the parties is inferred by law from the great disparity between the real value and the consideration given. London v. G. L. Anderson Brass Works, supra; Little v. Sterne, 125 Ala. 609, 27 So. 972 (1899); Gordon v. Tweedy, 71 Ala. 202 (1881).
Because fraudulent intent in Wilder was established as a matter of law by the son's payment of substantially inadequate consideration, it was not necessary for this court to remand for a finding concerning the grantor father's intent. This not too apparent, and understandable, flaw in the opinion was astutely seized upon by Campbell. It is what lends credence, however specious, to his arguments regarding proper interpretation of Wilder.
We, therefore, overrule Smith v. Wilder to the limited extent that it requires actual proof of the grantor's fraudulent intent before a conveyance may be partially set aside because made for substantially inadequate consideration.
Campbell does not allege that cross-appellees paid a substantially inadequate consideration. Consequently, the trial court correctly addressed the question of participation by cross-appellees as determinative of whether the conveyances to them should have been set aside.
The trial court's decision that none of the cross-appellees were participants in Bynum's fraudulent intent is the basis of the second issue raised on cross-appeal. Plaintiff claims the court committed reversible error in failing to find cross-appellees had notice of facts sufficient to put them on inquiry as to Bynum's fraudulent intent, and in failing to find proper inquiry would have led to discovery of that intent.
With regard to the Words and Payne, the trial court found that, although they were aware of Bynum's conviction, it was unclear from the evidence they knew of the pending civil lawsuit or of the notice filed by Campbell which was denominated as a lis pendens. It also found that at the time of their purchases they did not know of previous sales by Bynum.
Furthermore, the trial court concluded that diligent inquiry would have revealed only two other sales by Bynum prior to that time, and that Bynum's avowed purpose of selling his property to raise funds for necessary attorneys' fees was probably justifiable at that early state in the proceedings.
Concerning Brooks Derrick, Izzy Derrick, and Patsy Self, business partners who jointly purchased a commercial lot from Bynum, the court determined these defendants were also unaware of the notice or of other conveyances by Bynum. Additionally, it found these defendants had bargained with Bynum for the purchase of the property in question on several prior occasions and on each occasion Bynum held firm to his asking price of $20,000, to which they finally agreed. Witnesses testified and placed a market value on the lot of $19,000 or less.
The trial court heard a full week of testimony, after which it concluded that all *845 of these cross-appellees had knowledge of substantially fewer facts than did the Gladishes and the bank, that the facts and circumstances surrounding their purchases would not have reasonably put them on inquiry, and that inquiry would not have likely revealed Hugh Bynum's fraudulent intent. These conclusions are amply supported by the evidence of record. As is axiomatic, where the trial court hears the case ore tenus every presumption must be indulged in favor of its findings, and they will not be disturbed unless palpably wrong. Ford v. Alabama By-Products Corp., 392 So.2d 217 (Ala.1980).
While concluding that cross-appellees were not participants in the fraud, the court reached a contrary result with respect to the transactions involving the Gladishes and the bank.
The Gladishes were grantees of a tract of land from Bynum, the purchase of which was financed by the bank, which took a mortgage from the Gladishes as security for the loan. Both the conveyance and the mortgage were set aside and these are the actions from which the Gladishes and the bank appeal.
Initially, the Gladishes and the bank challenge the trial court's finding that Hugh Bynum's intent with regard to the transactions involving them was fraudulent. The trial court in its final judgment of 3 December 1979, stated:
The evidence is overwhelming that Bynum's conveyances were made by him with an intent to hinder, delay or defraud the plaintiff in collection of his damages. That intent is manifested by the following facts and circumstances.
1. The transfers were made by Bynum while the plaintiff's civil suit for damages was pending. The suit was, by no means, a frivolous one, but to the contrary, it was one which obviously had substantial merit in view of Bynum's conviction.
2. The transfers were part of a series by which Bynum transferred all of his property. It is clear that the sale of all his assets [was] not necessary to pay attorney fees and taxes.
3. Although fair market value is a nebulous standard, the transfers by Bynum, with two or three exceptions, were made for prices that were closer to the low side of market value than they were to the high side. Bynum's willingness to sell for such prices indicates an eagerness on his part to dispose of his property in advance of any recovery by the plaintiff as a result of the civil suit.
4. The transfers by Bynum allowed him to convert his assets to cash and make them inaccessible to creditors, more particularly, the plaintiff.
5. Bynum made unexplained withdrawals of nearly $300,000 in cash from his checking accounts in increments of just less than $10,000 each. There was testimony that banks are required to report to an agency of the government, and thus call attention to, cash withdrawals of $10,000 or more.
The court concludes that the transfers by Bynum were made with an intent to hinder, delay or defraud the plaintiff.
There is an abundance of evidence supporting the trial court's conclusion that Bynum, in making the transaction in question, was effecting a fraudulent intent. We find no error infecting entry of this judgment.
The Gladishes and the bank also take issue with the trial court's finding that they participated in Bynum's fraudulent intent in his transactions with them. Although the trial court specifically found that none of the defendants actively and knowingly participated in Bynum's fraudulent intent, it held the Gladishes and the bank possessed knowledge of sufficient facts and circumstances to put them on notice, which if followed up, would have revealed his intent.
The court found that W. L. Gladish, at the time he purchased the property, had knowledge of the following facts:
1. Bynum had been convicted of assault with intent to murder the plaintiff.
2. The plaintiff had a pending suit against Bynum seeking damages of $2,000,000.

*846 3. Bynum seldom sold property in the past but since his conviction he had sold several tracts.
4. Bynum was willing to sell to Gladish at Gladish's price.
5. A lis pendens notice recorded in the Probate Office by the plaintiff's attorneys warned against the purchase of any property from H. O. Bynum, Jr. until the results of the $2,000,000 suit were known. Although the legal effect of this notice was not to create a lien, it placed upon persons who had knowledge of it a duty to proceed with caution.
6. At least one attorney was unwilling to write a title insurance policy because of the pending suit and the notice of lis pendens.
Sufficient facts appear in the record to support these findings; the court's conclusion that W. L. Gladish was a participant in the fraudulently intentioned transaction is due to be affirmed.
Johnnie Gladish, wife of W. L. Gladish, claims that despite these findings of fact, the trial court erred in setting aside the conveyance to the extent of her interest in the property because the findings dealt only with the knowledge of her husband and it could not be imputed to her where no agency relationship between them was alleged to exist.
Of course, the relationship of husband and wife does not, per se, raise a presumption that the former acted as agent for the latter. Turner v. Rhodes, 22 Ala. App. 426, 116 So. 412 (1928). However, the fact that a husband is the agent of the wife may be implied from circumstances. 41 Am.Jur.2d Husband and Wife § 233 (1955).
It has been held that a husband's actions in purchasing land, where the wife is the named grantee, with money obtained from one to whom both spouses executed a mortgage on the land as security for the loan amounted to the husband being his wife's agent. Sansom v. Sturkie, 245 Ala. 514, 18 So.2d 267 (1944).
The evidence showed both W. L. and Johnnie Gladish signed the loan agreement and mortgage to the bank. In addition to raising the presumption that her husband acted as her agent in negotiating the purchase, the actions of Johnnie Gladish in signing the loan agreement and mortgage give rise to an inference that she ratified his acts as her agent.
There is authority that an agent's knowledge of the unauthorized and fraudulent nature of a transaction to which he is a party is not imputed to the principal, Eccles & Co. v. Louisville & N. R. Co., 198 F. 898 (N.D.Ala.1912), aff'd, 213 F. 1020 (5th Cir. 1914), cert. den. 238 U.S. 617, 35 S.Ct. 417, 59 L.Ed. 1491 (1915); however, a principal will be liable where the fraud of the agent is ratified, although such fact was not within the scope of the agent's authority. Shelton v. Duncan, 385 So.2d 1329 (Ala.Civ.App. 1980).
Given the inference of ratification which can be drawn from the evidence, the trial court's judgment against Johnnie Gladish must be upheld. In the absence of specific findings of fact by the trial court, this court will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous and against the great weight and preponderance of the evidence. O'Connor v. Rabren, 373 So.2d 302 (Ala. 1979); Lipscomb v. Tucker, 294 Ala. 246, 314 So.2d 840 (1975).
This rule is equally applicable to the setting aside of the mortgage from the Gladishes to the bank. The 3 December 1979 judgment made no reference to the mortgage. As the result of Campbell's motion, the judgment was amended on 11 February 1980 to declare void and set aside the mortgage, but made no findings regarding the bank's fraudulent participation in that transaction. The bank alleges error in the judgment against it setting aside the mortgage without findings of fact as a basis for doing so.
The 3 December 1979 judgment did make specific findings of fact relating to the bank's discount of Jessie Bynum's promissory note to Hugh Bynum, given him previously *847 by her as partial consideration for one of the conveyances of real estate to her.
In connection with this transaction, the trial court found the bank to be a fraudulent participant by virtue of facts known to J. E. Moody, chairman of the board and chief executive officer of the bank, with whom Bynum dealt directly when discounting the note. The trial court found that Moody knew of Bynum's conviction and of the pending civil suit for damages. It also found that Moody knew of the so-called lis pendens notice and, further, that he was aware that the bank's attorney had been unwilling to write a title insurance policy on the property purchased by the Gladishes. Additionally, Moody knew of the sale to the Words and Payne, and of that from Hugh to Jessie.
It was also found to be a fact that inquiry by the bank when the promissory note was offered to it would have revealed the ten recent previous conveyances of real estate by him; in addition, the bank's own records showed a number of large cash withdrawals by Bynum from his checking account during the period almost immediately following his conviction.
In light of the substantial evidence of record supporting the trial court's conclusion that the bank was a fraudulent participant in the transfer of the note, it follows that the same evidence also supports the judgment setting aside the mortgage.
The Gladishes also raise as an issue the adequacy of consideration paid by them. Because we affirm and approve the findings that the Gladishes were fraudulent participants we see no need to address this issue. Where a conveyance is made upon a present consideration, there being an intent on the part of the grantor and the grantee to defraud the grantor's creditors, the conveyance is void as to existing creditors, however valuable and adequate the consideration. Smith v. Heineman, supra. If the grantee has notice of facts putting him on inquiry as to the grantor's fraudulent intent, it is the same as if he too has the intent. Crawford v. Kirksey, supra; Waddle v. Great Southern Phos. Co., 184 Ala. 346, 63 So. 462 (1913); Smith v. Collins & Griffith, 94 Ala. 394, 10 So. 334 (1891).
It is not clear whether the trial court in setting aside the Gladish mortgage to the bank intended that the loan agreement between them (the mortgage note), secured by the mortgage, also be set aside. Although not directly raised by the parties, lest uncertainty resulting in further litigation of this issue should arise, we are constrained to speak to the respective rights of the Gladishes and the bank under the loan agreement; use of the loan proceeds by the Gladishes to finance their purchase from Hugh Bynum made the loan transaction an integral step in the fraudulent conveyance from Bynum.
It is well settled that conveyances or transfers made to hinder, delay, or defraud creditors are valid and operative between the parties when fully consummated. Neither party can rescind or defeat them. Continental Ins. Co. v. Dotsun, 260 Ala. 499, 70 So.2d 796 (1954). A fraudulent conveyance is valid as to all the world except creditors of the grantor, notwithstanding the statute declaring that such conveyances are void. Brown v. Andrews, 288 Ala. 111, 257 So.2d 356 (1972). First National Bank v. Love, 232 Ala. 327, 167 So. 703 (1936).
Thus, the obligation of the Gladishes to the bank under the loan agreement was binding upon them. Accordingly, the bank is entitled to retain any monies already collected under that loan agreement.
The bank may not, however, enforce payment of any amounts remaining due. Where parties enter into an arrangement pursuant to a fraudulent conveyance, a court will not interfere between them, but will leave them where they have placed themselves. This stems from the maxim "in pari delicto melior est conditio possidentis": in the case of equal or mutual fault the condition of the party in possession is the better one. Glover v. Walker, 107 Ala. 540, 18 So. 251 (1894); King v. King, 61 Ala. 479 (1878).
*848 The judgment and findings of the court below entered and made after hearing the claims without a jury are in all respects hereby affirmed.
We will treat the action voiding or setting aside the assignment of the Jessie Sue Bynum note to the bank in connection with the succeeding part of this opinion dealing with the jury trial.

The Jury Trial
The brief of appellant Jessie Sue Bynum, individually and as trustee, purports to raise ninety-two issues. The true points of inquiry can be reduced to six bases of alleged error. Of these, in the first three she claims the jury was improperly prejudiced by Campbell's appearing in the courtroom wearing shorts which revealed the stumps of his severed legs, scarred as a result of the explosion and resultant amputation, and by certain remarks of his counsel made in closing argument concerning her wealth. She also assigns as error the trial court's instruction to the jury defining adequate consideration.
The jury was empaneled as an advisory one. The verdict of an advisory jury is merely for the purpose of "enlightening the conscience of the chancellor"; the court in its discretion may adopt or reject an advisory verdict. Lucas v. Scott, 247 Ala. 183, 24 So.2d 540 (1945).
Whether error may be predicated on conduct of parties and counsel before, and the trial court's instructions to, an advisory jury has not previously been considered by this court. We opine, however, that the rule followed in most jurisdictions, that arguments made to, and conduct of counsel before, an advisory jury cannot be made the basis of reversible error where the ultimate findings are made by the trial court, is the better rule and that which we should adopt and apply. See 5A C.J.S. Appeal and Error, § 1713 (1958). It is equally applicable to a party's conduct or statements before such a jury.
We think a similar principle should control with respect to instructions of the court to an advisory jury. Therefore we today hold that alleged errors in instructions to a jury are not grounds for reversal where the verdict is purely advisory and the trial court makes its own independent findings, as it here did, on evidence sufficient to sustain the judgment, unless it is obvious from the instructions that the trial court was operating under a basic misconception of the governing law. King v. H. J. McNeel, Inc., 94 Idaho 444, 489 P.2d 1324 (1971); Hartman v. Burford, 242 Cal.App.2d 268, 51 Cal.Rptr. 309 (1966).
The instruction complained of does not support the conclusion that there was any basic misunderstanding of applicable law upon the part of the trial court. This is particularly true because the evidence adequately supports a finding that Jessie Sue Bynum had knowledge of facts to have led to inquiry by her which, if followed up, would have resulted in the discovery of her brother's fraudulent intent. As discussed in connection with the Gladishes' appeal, proof of knowledge of such facts by the grantee obviates the necessity for examination of the adequacy of consideration when declaring a conveyance void as fraudulent. Heineman, supra.
Jessie Sue, along with the bank, urges as error the trial court's action in setting aside the conveyance to her of certain acreage referred to as the "By-Pass" or "Ridge" property as well as at the same time setting aside the note she gave Hugh, which he in turn discounted at the bank. The note for $100,000 in addition to $23,000 cash, was the consideration for the conveyance to her of Hugh's one-third interest in the "By-Pass" or "Ridge" property.
She and the bank contend that setting aside both the conveyance and the assignment of the note results in a double recovery for Campbell. It is argued that this places Campbell in a position superior to that he would have occupied had the transactions never occurred.
Campbell counters that this is not true because his two million dollar judgment cannot be satisfied, much less exceeded, by *849 levy and sale of all the properties subject to execution of his judgment resulting from the setting aside of Hugh Bynum's conveyances and the assignment of the note.
Campbell's focus on full satisfaction of his judgment as determinative of this issue is misplaced. It is recovery in his action under two contradictory theories that presents the problem and causes the error.
A creditor cannot obtain relief on the theory that his debtor's conveyance was void and of no effect and also on the theory the debtor effectively conveyed the property and the conveyance was valid. McCurdy v. Kenan, 185 Ala. 183, 64 So. 578 (1914). He cannot pursue the property in the hands of a fraudulent grantee and at the same time ratify the sale and collect the purchase money on the theory there was a valid sale and conveyance. See 37 C.J.S. Fraudulent Conveyances § 305 (1943).
When he elected as his remedy to have Hugh Bynum's interest in the "By-Pass" or "Ridge" property set aside, Campbell pretermitted his right to proceed against Hugh Bynum's rights as payee of the note; we find the trial court incorrect in concluding that the transfer of the promissory note from Bynum to the bank should be set aside and the rights as payee under the note restored to Hugh Bynum, subject to satisfaction of Campbell's judgment. Campbell argues, however, that the bank has no standing to contest the trial court's finding, since the judgment does not bar the bank from collecting the balance due on the note from Jessie Sue Bynum and, as a consequence, the bank has not been injured.
Although we reverse the judgment setting aside the transfer of the note, the trial court's finding that the bank fraudulently participated in purchasing the note is not without significance. As discussed earlier in this opinion in connection with the loan agreement between the Gladishes and the bank, transfers made with intent to defraud creditors are valid and operative between parties in pari delicto, but the court will not grant such parties affirmative relief, leaving them instead where it finds them. Accordingly, the bank is entitled to keep monies collected from Jessie Sue Bynum under the note, but may not enforce further payments.
Another alleged error upon the part of the trial court in the jury trial is the entry of judgment in the absence of Lucy Scott Bynum, who was not joined as a party, but is now alleged to be a necessary and indispensable one whose rights were adversely affected by that judgment.
Campbell's initial contention is that this issue should not be considered because Jessie Sue Bynum failed to raise the absence of a necessary and indispensable party in her pleadings.
Joinder of parties is governed by the rules of civil procedure.

Rule 19

JOINDER OF PERSONS NEEDED FOR JUST ADJUDICATION
(a) Persons to be Joined if Feasible. A person who is subject to jurisdiction of the court shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action. [Emphasis added.]
It is plaintiff's duty to join as a party anyone required to joined under the above quote. If such persons are not joined, the plaintiff must, under subsection (c) of Rule *850 19, ARCP, state their names and the reasons why they are not joined. If there is a failure to join a person needed for just adjudication by a litigant, then, under subsection (a) of Rule 19, the trial court shall order that he be made a party.
However, failure of the plaintiff or the trial court to add a necessary and indispensable party, and of the defendant to raise the absence of such party in his or her pleadings, does not necessarily dispose of the issue. This defect can be raised for the first time on appeal by the parties or by the appellate court ex mero motu. Mead Corp. v. Birmingham, 350 So.2d 419 (Ala.1977); Davis v. Burnette, 341 So.2d 118 (Ala.1976). Consideration of the issue of a necessary and indispensable party for the first time on appeal is particularly appropriate when the interests to be protected are those of a minor or, as in this action, a non compos mentis.
Campbell further argues that the interests of Lucy Bynum were fully and adequately represented and protected by Jessie Bynum, in the latter's capacity as trustee of the Lucy Scott Bynum trust. In support of this proposition Campbell cites Mudd v. Lanier, 247 Ala. 363, 24 So.2d 550 (1946), in which this court stated:
It is often true the beneficiaries of a trust, though they own a vested interest, are not necessary parties to a suit in equity by the trustee. That is true when the suit does not affect the relations between the trustee or the trust estate and the beneficiary, as when the trustee is seeking to enforce a security or collect a debt for the estate. Adler v. First Nat. Bank of Birmingham, 233 Ala. 325, 171 So. 904; Silverstein v. First Nat. Bank, 231 Ala. 565, 165 So. 827, and cases there cited; and when some person is seeking in equity to reduce the assets of the estate, as to which there is no conflict of interest between the estate and beneficiary. The trustee then represents the beneficiary. Watts v. Steele, 19 Ala. 656, 54 Am.Dec. 207.
247 Ala. at 372, 24 So.2d 550.
In the case sub judice, however, it cannot be fairly said that no conflict of interest exists between the trustee and beneficiary. Plaintiff's complaint created an adversary relationship between Jessie Sue Bynum, as trustee, and Lucy Scott Bynum, as beneficiary, by charging Jessie with fraudulent acts in connection with transfers of trust assets, which, if proved, were acts ultra vires and contrary to her fiduciary obligations as trustee.
It is true that Lucy could not have prevented the setting aside of the conveyances involving trust assets once Jessie, as trustee, was found to be a participant in the fraud. In First National Bank of Birmingham v. Love, 232 Ala. 327, 167 So. 703 (1936), this court held:
That [an] active trustee taking title, disposition, and management of the properties in hand stands in the same position as if made direct to the beneficiary has not been questioned anywhere. To hold such trustee to a like accounting is not to extend the rule, while not to hold him would be to make exception in favor of trustees of this class and throw wide open the door to fraudulent conveyances.
232 Ala. 333-334, 167 So. 703.
If Lucy had been added as a party defendant and property represented by a guardian ad litem, however, she would have been afforded the opportunity to file a cross-claim against her sister for depletion of the assets of the trust due to Jessie's ultra vires acts, or those in breach of her fiduciary duties.
Although the final judgment does not as a matter of law bar Lucy Bynum from protecting her interests by filing a separate action seeking such relief, it is clear that her ability to protect her interests, in light of her admitted physical and mental incapacity, has as a practical matter been substantially impaired. We hold that Lucy Scott Bynum is a necessary and indispensable party to this action.
The absence of a necessary and indispensable party necessitates the dismissal of the cause without prejudice or a reversal with directions to allow the cause to stand *851 over for amendment. Rogers v. Smith, 287 Ala. 118, 248 So.2d 713 (1971). In order to insure that Lucy Bynum's rights affected by this litigation will be protected, we reverse the judgment and remand for proceedings in accordance with the following directions, and for amendments to the final judgment consistent with the other holdings and stated principles of law found elsewhere in this opinion.
On remand, Lucy Scott Bynum should be added as a party defendant and a guardian ad litem appointed to represent her. If the trial court determines that all evidence necessary to determine the issues made under any claim which Lucy Scott Bynum should file through her guardian ad litem, as next friend, against her sister, as trustee or individually, has already been received and recorded, the trial court may thereupon amend its final judgment and render any appropriate relief without further findings of fact. If, on the other hand, the trial court determines that additional evidence is required, it may retain undisturbed its findings of fact regarding issues already litigated and unaffected by any new issues presented, and hear only such additional evidence as is necessary to resolve those new issues raised and those issues, if any, previously litigated but affected by the new issues.
Our finding that Lucy Scott Bynum was a necessary and indispensable party is dispositive of the last matter urged as error by Jessie Sue Bynum, namely, the failure of the trial court to impose on the property restored to Hugh Otis Bynum, Jr., a lien in favor of the trust, thereby holding the trust liable for the tortious acts of the trustee.
The final matter to be addressed is Campbell's cross-appeal from the judgment based upon the grant of a motion to dismiss and a judgment on the pleadings in favor of Jessie Sue Bynum as to Campbell's conspiracy claim against Hugh Bynum and Jessie Sue Bynum, individually and as trustee. Jessie Sue argues this cross-appeal should be dismissed for failure to file a proper notice of cross-appeal.
Plaintiff filed a notice of cross-appeal on 24 March 1980, the forty-second day after the trial court's order on the post-trial motions. It does not name Jessie Sue Bynum as an appellant in either of her capacities, but identifies only the Gladishes and the bank as appellants. Not even the traditional "et al." is found in it to indicate additional cross-appellees. Furthermore, the designation of the record accompanying the notice, while designating the materials previously designated by the Gladishes and the bank, does not designate any materials pertaining to the conspiracy claim or to any other matter concerning Jessie Sue Bynum.
Faced with a similar situation in Edmondson v. Blakely, 341 So.2d 481 (Ala. 1976), this court stated:
Our ARAP 3(c), like its federal counterpart, provides for a simple notice of appeal specifying the party or parties taking the appeal. The rule says that the notice "... shall designate the judgment, order or part thereof appealed from...." The federal courts have been very liberal in entertaining appeals even where the notice fails to comply literally with the requirements of Rule 3(c). The test for dismissal for failure to comply seems to be whether the intention to appeal from a specific judgment may be reasonably inferred from the text of the notice. Jones v. Chaney & James Const. Co., 399 F.2d 84 (5th Cir. 1968); Donovan v. Esso Shipping Co., 259 F.2d 65 (3rd Cir. 1958).
Several federal decisions have concluded that FRAP 3(c), although given its liberal interpretation by the courts, requires that in a multi-party suit, the notice of appeal must, to be effective, include the names of those parties taking the appeal. Van Hoose, et al. v. Eidson, et al., 450 F.2d 746 (6th Cir. 1971); Cook & Sons Equipment, Inc. v. Killen, 277 F.2d 607 (9th Cir. 1960).
While we might not be willing to go so far as to require the designation of each appellee in the notice of appeal, we do think that fairness requires that some indication appear that an appeal has been taken to reverse a judgment rendered in favor of a prevailing party.
*852 Cross-appellant argues that the notice refers to the final judgment of 3 December 1979, in which the motions to dismiss and for judgment on the pleadings as to the conspiracy count were granted, and also to the 11 February 1980 ruling of the trial court on post-trial motions, which dealt with, among a multitude of other issues, the conspiracy claim. Additionally, he asserts the designation of the record, while not designating materials relating to the conspiracy claim, does mention that the issue is being raised.
In the absence of other information, these factors might be considered in order to construe the notice as a sufficient notice of cross-appeal of the conspiracy claim, under a majority of this court's liberal interpretations of the rules. However, as indicated by Campbell's response to the motion to dismiss the cross-appeal, Jessie Sue Bynum had not filed her notice of appeal at the time he, Campbell, filed the notice of cross-appeal. Further, in his response he admits that the notice filed by him was a notice of cross-appeal "to that appeal which had been taken previously by the appellants Gladish and J. C. Jacobs Bank in Case Numbers 79-297 and 79-296, respectively, which, at that time were the only appeals known to Loy Campbell." Plaintiff is, in effect, now taking the position that he filed a cross-appeal against a party who had not at that time appealed.
The only jurisdictional requirement in our rules of appellate procedure is the timely filing of the notice of appeal. Edmondson, supra. There would have been no difficulty attached to filing a separate notice naming Jessie Sue Bynum as appellee or stating on the face of the notice of cross-appeal against the Gladishes and the bank that the cross-appeal was also from a judgment or order in favor of Jessie Sue Bynum. Plaintiff having failed in this respect, his cross-appeal from the trial court's judgment dismissing the conspiracy claim and from judgment on the pleadings regarding that claim, is due to be and is hereby dismissed for lack of jurisdiction.
The judgment of the DeKalb Circuit Court denying the writ of mandamus is affirmed. The judgment of the Jackson Circuit Court, as amended, declaring the deed from H. O. Bynum, Jr., to W. L. Gladish and wife, Johnnie Gladish, and the mortgage from W. L. Gladish and wife, Johnnie Gladish, to J. C. Jacobs Banking Company, Inc. to be void is affirmed; the judgment declaring the assignment executed by H. O. Bynum, Jr. to Jacobs Banking Company of his interest in the promissory note executed by Jessie Sue Bynum, individually and as trustee of the Lucy Scott Bynum Trust to be void is reversed; and the cause is remanded for an entry of a judgment on the assignment of the note in accordance with this opinion. The part of the judgment setting aside the conveyances made by H. O. Bynum, Jr. to Jessie Sue Bynum, individually, is affirmed. That part of the judgment setting aside the conveyances made to Jessie Sue Bynum, as Trustee of Lucy Scott Bynum is reversed and the cause is remanded with directions; the judgments in favor of the Words, Payne, Brooks Derrick, Patsy Self and Izzy Derrick are affirmed on the cross-appeal of W. Loy Campbell. The cross-appeal of W. Loy Campbell from the judgment of Jackson Circuit Court dismissing his conspiracy claim and from the judgment on the pleadings regarding that claim is dismissed.
Case No. 79-625Affirmed.
Case No. 79-296Affirmed in part; reversed in part and remanded with directions.
Case No. 79-297Affirmed.
Case No. 79-464Affirmed.
Case No. 79-465Reversed and remanded with directions.
Case No. 79-466Affirmed in part; dismissed in part.
FAULKNER, JONES, ALMON and ADAMS, JJ., concur.

ON SECOND APPLICATION FOR REHEARING IN CASE NO. 79-465
EMBRY, Justice.
On second application for rehearing, the opinion on application for rehearing is withdrawn *853 for modification. The opinion on application for rehearing, as modified, is reissued and reads as follows:
No applications for rehearing were filed in Cases 79-297, 79-466, and 79-625.
The application of J. C. Jacobs Banking Co. in Case 79-296 is denied. The applications of Jessie Sue Bynum and W. Loy Campbell in Cases 79-464 and 79-465 are denied. However, the court grants rehearing ex mero motu in Case 79-465 and modifies its original opinion therein.
We reversed the holding in Case 79-465 and remanded with directions to add Lucy Scott Bynum as a party, after concluding she was a necessary and indispensable party to that action under Rule 19, ARCP. The specific language in Rule 19 on which this determination was based requires joinder as a party of one who "claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may as a practical matter impair or impede his ability to protect that interest."
In seizing upon the latter part of that sentence as reflecting Lucy Scott Bynum's posture with respect to this action, we lost sight of the equally critical language which makes the rule applicable to one who "claims an interest in the subject matter of the action."
All legal interests in the Lucy Scott Bynum Trust property were held by Lucy's sister, Jessie Sue Bynum, as trustee, by virtue of the instrument creating the trust. For this reason we recognized in the original opinion that:
It is true that Lucy could not have prevented the setting aside of the conveyances involving trust assets once Jessie, as trustee, was found to be a participant in the fraud.
As Lucy Scott Bynum had no interests to protect in the property which was the subject of the lawsuit, we conclude upon consideration of this issue that she was not a necessary and indispensable party required to be joined under Rule 19.
We are mindful that one issue raised by Jessie Sue Bynum on appeal was not addressed by the court in the original opinion because our reversal on the issue of a necessary and indispensable party was dispositive of the appeal. Jessie Sue Bynum contended the trial court should have impressed a lien in favor of the trust upon the property which was restored to Hugh Otis Bynum when the fraudulent conveyances were set aside. Failure to impress such a lien, she argued, is to hold the trust liable for the tortious acts of its trustee.
As Lucy Scott Bynum was not made a party to this action, and because we have determined upon reconsideration that she was not a necessary and indispensable party by virtue of her holding no interest in the subject matter of this action there existed no basis in this action for a claim against the trustee for mismanagement of trust assets. Any such claim which Lucy Scott Bynum might conceivably have against her sister would be a matter collateral to the issues in this action and would therefore, if pursued, properly be the subject of independent litigation. That being the case, we make no comment as to the merits of any claim which Lucy Scott Bynum might have against Jessie Sue Bynum, as trustee.
That portion of our original holding which reversed and remanded with directions Case 79-465 is hereby vacated and the judgment of the trial court therein is affirmed.
Case No. 79-296Application of J. C. Jacobs Banking Co., a Corporation, overruled.
Case No. 79-464Applications of Jessie Sue Bynum and W. Loy Campbell, overruled.
Case No. 79-465Applications of Jessie Sue Bynum and W. Loy Campbell, overruled. Rehearing granted ex mero motu, affirmed.
FAULKNER, JONES, ALMON and ADAMS, JJ., concur.
*854 Second application of Jessie Sue Bynum for rehearing denied; opinion on application for rehearing withdrawn, modified, and reissued.
FAULKNER, JONES, ALMON and ADAMS, JJ., concur.