RUSSELL, Judge.
Dwight McCurdy filed a petition seeking to modify a divorce decree. Teresa S. McCurdy, his former wife, filed a counter-petition seeking to set aside a mortgage secured by property awarded to her by the divorce decree and also seeking to set aside a lease on the property. Cecile Paulette Williams, owner of the mortgage, then filed a petition for intervention, requesting that the trial court order a judicial foreclosure against Dwight’s interest in the property. The trial court allowed Williams to intervene. Teresa filed a motion to add TransSouth Contractors and Margie McCurdy as parties’ defendant, which was granted by the trial court.
Following an ore tenus proceeding, the trial court issued an order that contained the following findings:
“When Teresa McCurdy and Dwight McCurdy divorced on August 1, 1988, Teresa was awarded all of the parties’ real estate. Teresa later learned that Dwight had executed a mortgage of his interest in the property to his mother, Margie McCurdy, on November 11, 1986.
“The mortgage was assigned by Margie to Paulette Williams on February 15, 1988. Williams is the daughter of Margie, and the sister of Dwight.
“Williams seeks to have the mortgage judicially foreclosed, and Teresa seeks to have the court declare the mortgage null and void.
“This court finds that Dwight’s mortgage to Margie, and the subsequent assignment to Williams were all part of a plan or scheme to defeat the claims of Dwight’s creditors, whether then existing or thereafter arising. The court is not reasonably satisfied by the evidence that Margie gave valuable consideration to Dwight for the mortgage, and that the familial and practical relationship between Williams, Margie, and Dwight clearly establishes that Williams is not a holder in due course.”
The trial court then declared the mortgage “a nullity and of no force and effect” and vested the interests of all parties in the real estate in Teresa. Williams and Margie filed a motion to alter, vacate, or amend or, in the alternative, for a new trial. The motion was denied by operation of law, and Williams appeals. We affirm.
The dispositive issue is whether the trial court erred in setting aside the mortgage after finding that there was failure of consideration for the mortgage and that Williams was not a holder in due course.
Initially, we note that a presumption of correctness attaches to the trial court’s *273 judgment when evidence is presented ore tenus, and we will reverse only when the judgment is palpably wrong or manifestly unjust. Top Music Co. v. Crenshaw, 587 So.2d 389 (Ala.Civ.App.1991). Furthermore, when the evidence is conflicting, the findings of the trial court are presumed correct, and every presumption will be indulged in favor of the court’s findings, which will not be disturbed unless they are palpably wrong. Id.
The record indicates that in August 1968 a deed was executed transferring eighty acres of land from Cecile P. McCurdy Williams and Donald Lee Williams to Dwight and Teresa. Dwight and Teresa built a home on the property in 1971 and lived there during their marriage.
Dwight and Teresa separated in January 1986 and were divorced in August 1988. They also filed a petition for bankruptcy in 1986. Subsequently, the marital home on the property burned, and in August 1986 the mortgages on the home were paid by insurance proceeds.
On November 11, 1986, Dwight Executed a mortgage in the amount of $45,000 on the property in favor of his mother, Margie. Williams, Dwight’s sister and Margie’s daughter, testified at deposition that the mortgage was not made to cover any specific transactions but that it was to cover transactions that had accumulated over the years in which Margie had given or lent money to Dwight. Williams testified regarding loans that she made at Margie’s request for Dwight’s benefit against certificates of deposit owned by Margie. She also testified regarding money drawn from Margie’s savings account for Dwight and property sold by Margie, with the proceeds given to Dwight.
Williams further testified that she purchased a house for $48,000 near her home in Tennessee for Margie to live in and that Margie assigned the mortgage to her at about the same time.
Margie testified that she had lent Dwight substantial sums of money in cash “out of my fruit jars,” in which she kept substantial sums of money.
At the time that the original mortgage was executed, a suit filed by Dwight’s uncle was pending against Dwight. It was listed as a disputed claim on the bankruptcy petition. Margie testified that she had never had Dwight execute mortgages for money which she had given him before, but that she did so this time to keep the uncle from getting the land. She also stated that the mortgage was “to cover a little of my money”; however, whenever Dwight came to her and needed money, she gave it to him.
Rhonda McAlpin, Dwight and Teresa’s daughter, testified regarding a confrontation that she had with Dwight in October 1986. She stated that Dwight asked her to get Teresa to sign a deed to get the property out of Teresa’s name. She further stated as follows:
“At the time, he was mad at me because I couldn’t get her to sign any documents. He said, ‘You’re the only one that has any control, can talk any sense into your mother, get her to sign these deeds.’ ... He said, ‘I’ll put a mortgage on this property.’ I said, ‘You can’t put a mortgage on this property, there is nothing but naked dirt, there’s nothing to mortgage.’ [And he said,] ‘Oh, I’ll fix it, you just wait and see, I’ll fix it.’
[[Image here]]
“He said, ‘Don’t worry, little girl,’ he said, ‘I’ll disown you, you’re no longer my daughter, I take back everything I’ve ever given you and I’ll fix it. If you can’t get your mother to take care of this and sign these deeds, I’ll fix it, I’ll put a mortgage on it, I’ll put a lien on it, we’ll go right now. Paulette [Williams], get in the car and let’s go, let’s go now. I’ll fix it. We’ll go right now and type up the deed. You just wait and see, we’ll fix it.’ That’s exactly what he said, and that’s what he did.”
Rhonda stated that Williams was standing just outside the car when the conversation took place and that there was a lot of loud arguing and screaming. When asked if she knew why Dwight wanted the property out of Teresa’s name, Rhonda responded, “Well, he constantly ranted, ‘Oh, *274 [my uncle is] going to take this and, you know, it’s going to be taken away from us, and it’s my land, it’s mine and I’m going to do what I want to with it.’ ”
Williams contends that the trial court erred in setting aside the mortgage because, she claims, there was no failure of consideration and the mortgage is valid and enforceable. She further claims that the transactions evidenced valuable consideration given by Margie to Dwight.
Williams also contends that the trial court erred in holding that the mortgage was part of a scheme to defraud creditors when, she claims, there were no creditors at the time that the mortgage was executed. Citing Headley v. Headley, 264 Ala. 383, 88 So.2d 341 (1956), she states that “the creditor of the grantor is without remedy unless the debtor made the conveyance with the fraudulent intent to hinder, delay or defraud his creditors, and the grantee had notice of that intent, and participated in the fraud.” She claims that the uncle’s claim against Dwight was disputed and not yet in existence and that the grantee, Margie, had no notice of any intent to defraud creditors and participated in no attempt to defraud.
Teresa responds that this is a transaction between family members that is subject to especially careful scrutiny. Granberry v. Johnson, 491 So.2d 926 (Ala.1986). In addition, she claims that, because Margie knew about the pending suit from the uncle and stated that the reason for the mortgage was to keep the uncle from getting the land, Margie had notice of the fraudulent intent and the intent is imputed to her. J. C. Jacobs Banking Co. v. Campbell, 406 So.2d 834 (Ala.1981). Further, she claims that there was testimony from which the trial court could have concluded that Williams also had knowledge of the purpose of the mortgage and that Williams was not a holder in due course.
Regarding some of the principles governing fraudulent conveyances, an existing creditor who seeks to set aside a fraudulent conveyance may do so because of either actual fraud or constructive fraud. Granberry. However, a subsequent creditor may avoid a transfer only for actual fraud. Smith v. Wilder, 270 Ala. 637, 120 So.2d 871 (1960). Actual fraud involves the actual mental operation of intending to defeat or delay the rights of the creditor. Id. Furthermore, although Williams claims that the uncle’s claim was not yet in existence, the debtor-creditor relationship is created by the wrong that produces the injury, not by a judgment. Id.
The evidence indicates that Dwight executed the mortgage for fraudulent purposes and that Margie had notice of the fraudulent intent. It also indicates that Williams was involved in, or aware of, the transactions that took place. Therefore, based on the above, we hold that there was evidence on which the trial court could have based its judgment and that its findings were not palpably wrong. Top Music Co., 587 So.2d 389.
The judgment is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.