BEATTY, Justice.
This is an appeal from a summary judgment for plaintiff, certified as final pursuant to Rule 54(b), A.R.CÍV.P., in an action to recover damages based upon allegations of fraudulent conveyance. We reverse and remand.
Plaintiff, Eugene M. Morgan, was a judgment creditor of Dial & Company — The Nilrem Corporation (“Nilrem”). Morgan had recovered a judgment in the amount of $25,000 on January 17, 1985.
The present action was begun on October 81, 1985, when plaintiff Morgan sued Ted C. Dial, Jr., Dial Construction Company, Inc., and certain fictitious parties. In his complaint, as amended, Morgan alleged that following his recovery of the judgment, Ted C. Dial had caused defendant Dial Construction Company, Inc., to be formed forthwith and then caused monies to be transferred from Nilrem to the new Dial Construction Company, Inc., and that these monies were then used to purchase the assets of Nilrem, which consisted of a Ford truck, office furniture, and a telephone system. This transfer was alleged to have rendered the judgment debtor, Nil-rem, insolvent, but allowed the new Dial Construction Company, Inc., to operate essentially as Nilrem had operated. This conduct was characterized as done knowingly with intent to defraud plaintiff. Additionally, plaintiff alleged that defendant Dial had converted to his personal use an insurance recovery of $12,000 made to defendant Nilrem.
The defendants’ answer denied the essential allegations of plaintiff’s complaint. Defendants moved for summary judgment based upon the affidavits of Dial’s lawyer; Nilrem’s manager, Kathryn Hiers; the certified public accountant who did Nilrem’s accounting, Jackie Jones; and Dial.
Plaintiff also moved for summary judgment based upon the pleadings, affidavits on file, and answers to interrogatories.
Following a hearing, the trial court granted summary judgment in favor of plaintiff and also ruled that the $25,000 judgment recovered by plaintiff in January 1985 was extended to Dial personally, Nil-rem, and Dial Construction Company, Inc., jointly and severally. This appeal followed.
The $25,000 judgment referred to above was the result of a lawsuit brought by plaintiff Morgan against Nilrem based upon breach of warranty of repair work done by Nilrem upon Morgan’s home. The jury in that case assessed damages of $20,-000 for the cost of repairs and $5,000 for mental anguish. According to the affidavit of Nilrem’s accountant, Nilrem was insolvent before and after the judgment based upon that verdict was rendered.
*1363 Following that judgment, Dial and his office manager sought legal advice from a lawyer, informing him of Nilrem’s insolvency and of the fact that its insurance coverage would pay only $5,000 of Morgan’s judgment. According to the affidavit of the lawyer, he advised Dial as follows:
“Mr. Dial informed me, and I believed, that [Nilrem] was insolvent. Based upon that information, I advised Mr. Dial that [Nilrem] could file bankruptcy or that it could just ‘wind down.’ I further informed Mr. Dial that he could form a new corporation and have that coloration purchase any of the assets of [Nil-rem] so long as the new corporation paid fair market value for the assets it purchased and so long as [Nilrem] used the proceeds of the sale of its assets to pay existing debts of [Nilrem].”
The affidavit of Kathryn Hiers was to the same effect, and detailed the later course of action:
“2. I participated in conferences with [the lawyer] after Mr. Morgan obtained a judgment against [Nilrem], It was explained to me, and I understood, that [Nilrem] could sell its assets to a newly formed corporation, Dial Construction, Inc., without violating the law so long as Dial Construction, Inc., paid fair value for the assets which [Nilrem] conveyed to it and so long as [Nilrem] applied the proceeds of the sale to paying debts of [Nilrem].
“3. Mr. Dial formed Dial Construction, Inc. He funded that corporation with money he obtained from AmSouth Money Market Account # 55980287 (Ted. C. Dial, Jr.). Dial Construction, Inc., then purchased the following equipment of [Nilrem] for the amount set out below:
“A. Truck $3,600.00 (1/28/85)
“B. Office Equipment $4,100.00 (2/15/85)
“C. Truck Phone $3,000.00 (3/18/85)
“Total Purchase Price: $10,700.00
“4. I am the bookkeeper and office manager for Dial Construction, Inc., as well as vice-president. I was the secretary and bookkeeper of [Nilrem]. We had an appraisal for the truck in the amount of $3,600.00. The other property that was purchased by Dial Construction, Inc., was bought at fair market value based upon the purchase price, the age of the item, and its current condition.
“5. Upon receipt of the $10,700.00 proceeds from the sale of the equipment, as the secretary and bookkeeper of [Nil-rem], I used that money to pay regular expenses of the business as they fell due, including but not limited to: Vendor Debts, Subcontractor Debts, Payroll, Taxes, Bank Loans, Legal Fees, Telephone Bills.
“6. Mr. Dial received no pay from the corporation other than his regular salary check.”
Dial’s affidavit was to the same effect, but included additional details:
“2. I sought professional advice from [a lawyer] after Mr. Morgan obtained a judgment against [Nilrem]. [Nilrem] did not have the funds to pay the Morgan judgment; in fact, it was and had been operating in the red for some time. [Nil-rem] had a deficit of approximately $18,-000.00 not counting the Morgan judgment when I met with [the lawyer]. [The lawyer] advised me that I could form a new corporation and continue in the construction business so long as I did not cheat [Nilrem] or its creditors. He explained to me, and I understood, that [Nilrem] could sell its assets to a newly formed corporation, Dial Construction, Inc., without violating the law so long as Dial Construction, Inc., paid fair value for the assets which [Nilrem] conveyed to it and so long as [Nilrem] applied the proceeds of the sale to paying debts of [Nilrem].
“3. I formed Dial Construction, Inc., and funded that corporation with money I took from my personal money market account at AmSouth. I requested the corporate secretary and bookkeeper of [Nilrem], Kathryn Hiers, to determine the fair market value of the assets of [Nilrem] and convey those assets to Dial Construction, Inc., for the fair market value.
*1364 “4. Upon receipt of the proceeds from the sale of the equipment, I directed the secretary and bookkeeper of [Nilrem] to use that money to pay debts of [Nilrem].
“5. I have fully complied with the advice [the lawyer] gave me. I have not cheated [Nilrem] nor any of its creditors. Many creditors have been paid because of the way this was handled. If [Nilrem] had filed bankruptcy it would have been less trouble for me but not as many creditors would have been paid.”
Code of 1975, § 8-9-6, provides:
“All conveyances or assignments in writing, or otherwise, of any estate or interest in real or personal property and every charge upon the same made with intent to hinder, delay or defraud creditors, purchasers or other persons of their lawful actions, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, action commenced or judgment suffered with the like intent, against the persons who are or may be so hindered, delayed or defrauded, their heirs, personal representatives and assigns are void.”
As explained in Reese v. Smoker, 475 So.2d 506 (Ala.1985), the three elements of a fraudulent conveyance are: (1) a creditor to be defrauded, (2) a debtor intending to defraud, and (3) a conveyance of property out of which the creditor could have realized his claim or some portion thereof. The presence of these elements themselves, it was pointed out, is insufficient to set aside the conveyance. Quoting J C. Jacobs Banking Co. v. Campbell, 406 So.2d 834, 843 (Ala.1981):
“Further proof, however, is required before a conveyance found to be fraudulent is due to be set aside. [Emphasis original.]
“Where it appears the transfer in question was made for a valuable consideration, a plaintiff seeking to invoke the protection of Code 1975, § 8-9-6, must show the mutual fraudulent intent of the parties to the transaction. Proof of the grantor’s intent alone is insufficient to cause the conveyance to be set aside....”
While we may consider arguendo compliance with the first and third elements of a fraudulent conveyance as set out above, nevertheless, there exists a question of fact concerning the requisite element of intent to defraud on the part of these defendants. Notwithstanding the charges in the complaint, the affidavits of Dial, his lawyer, the corporation manager, and the accountant imply no fraudulent intent. Indeed, questions of intent are seldom appropriate for disposition by summary judgment. See Loveless v. Graddick, 295 Ala. 142, 325 So.2d 137 (1975).
Because we have decided that summary judgment was inappropriate for the reasons stated, we pretermit discussion of other issues raised.
The judgment is reversed and the cause remanded for further proceedings.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.